JOHN DAVENPORT, RECEIVER, *vs.* GEORGE O. LINES ET AL.

Third Judicial District, Bridgeport, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In an action by the receiver of an insolvent corporation against its directors to recover damages for an alleged fraudulent diversion of its funds in the payment of dividends while its capital stock was impaired, the defendants pleaded, as one of their defenses, that in so far as a recovery depended upon General Statutes, § 3340, the suit was barred by the statute of limitations. To this defense the plaintiff demurred, substantially upon the ground that his action

was not based upon § 3340. *Held* that under these circumstances the plaintiff was not harmed by the overruling of his demurrer.

The plaintiff claimed that although his action was not based on the statute (§ 3340), he could nevertheless recover although he failed to prove fraud or bad faith upon the part of the directors. *Held* that such claim was untenable.

The allegations of each of the two counts of the complaint reviewed, and *held* to describe but a single cause of action, viz., one for a fraudulent diversion of the funds of the corporation.

The defendants included in the statements and inventories of the corporation's assets, the expenses of advertising at the World's Fair in 1893. *Held* that inasmuch as the trial court found that this and all the other items complained of were entered honestly and in perfect good faith, the question whether they ought to have been treated as assets at all was not involved.

To prove, as against *L*, one of the defendants, that the corporation was insolvent and its capital stock impaired, the plaintiff offered in evidence a former judgment in an action against him, in which these facts were adjudicated. *Held* that inasmuch as this evidence did not touch the question of the fraud or bad faith of *L*, its exclusion did not injure the plaintiff.

As tending to prove the fraudulent overvaluation of the corporation's real estate, the plaintiff was asked what sum it brought on its sale by him as receiver. *Held* that as the record failed to disclose when and under what circumstances the receiver's sale was made, it could not be said that the trial court erred in excluding the question.

Argued November 2d, 1904—decided January 4th, 1905.

ACTION by a receiver against the directors of an insolvent corporation to recover damages for an alleged fraudulent diversion of its funds in the payment of dividends, brought to and tried by the Superior Court in Fairfield County, *Gager, J.* ; facts found and judgment rendered for the defendants, and appeal by the plaintiff. *No error.*

*Nichols C. Downs* and *George P. Carroll*, for the appellant (plaintiff).

*Goodwin Stoddard* and *William B. Boardman*, with whom was *Alfred B. Beers*, for the appellees (defendants).

HALL, J. Many of the facts of this case are similar to those recited in *Davenport* v. *Lines*, 72 Conn. 118.

The complaint contains two counts. Generally stated, the facts alleged are that the Keller Brothers & Blight Company, of which the defendants were directors, was organized as a joint-stock company in September, 1892, and succeeded the copartnership of Keller Brothers & Blight in the business of manufacturing and selling pianos; that in May, 1896, when the plaintiff was appointed receiver, the indebtedness of the company, incurred during the previous year, was about $30,000, for the payment of which the assets were insufficient by more than $20,000; that from September, 1892, to July, 1894, dividends to the amount of about $6,000 were paid quarterly upon preferred and common stock, upon the vote of the board of directors, including the defendants, and thereafter to the amount of about $2,000 upon preferred stock, without any formal vote of the board but at the direction of the defendants Lines, Blight and Marsh, the amount and time of payment of all of said dividends being stated; that although from the statements of assets and liabilities entered upon the books of the company there was an apparent surplus permitting the payment of such dividends, the capital stock of the company was in fact impaired, and the corporation was insolvent at the time of such payment of dividends; that such surplus was made to appear by overvaluing certain items of assets in the inventories and statements upon which such dividends were declared and paid, and by improperly including therein certain items as assets.

The particular transactions by which five different items of assets set forth in the complaint are alleged to have been so overvalued are described below.

The defendants having demurred to the complaint upon the ground, among others, that it contained no allegation that the defendants "were guilty of any bad faith or fraud in any alleged overvaluation or overappraisement of the assets," the plaintiff, by an amendment to the complaint, alleged that the defendants knew of the overvaluation of the items of "patterns and scales" and "real estate" to the amount of $18,000 (referred to below), "and that in con-

sequence thereof the capital stock of said company was only $32,000 instead of $50,000," and that the defendants " fully intended to assist and combine with the members of said partnership (of Keller Brothers· & Blight) in withdrawing and sequestering the aforesaid $18,000 from the capital stock of said company and for their own pecuniary advantage, and in bad faith and with a wilful disregard of the interests of all future creditors of said company, equivalent to actual fraud, they intended to represent to the public that said capital stock was $50,000 instead of $32,000, and thereby . . . to induce persons to deal with said company in the belief that the company had an unimpaired stock of $50,000." The plaintiff further alleged, in substance, in said amendment, that with such fraudulent purpose the defendants caused reports of the condition of the company to be recorded in the town records and (excepting defendant Keller in certain stated cases) voted for and authorized the payment of said dividends, and that the defendants (excepting in certain cases said Keller) ratified everything which had been done by any person in the impairment of the capital stock ; and that the creditors referred to gave credit and sold goods to the company in reliance upon the truth of said representations, and that the unimpaired capital of the company was $50,000.

The complaint, dated December 19, 1899, claims $30,000 damages.

In· order to determine the question of the defendants' alleged liability, we should first inquire whether the facts upon which it is based have been proved. With reference both to the actual value of the five items said to have been overvalued, and to the manner in which their value was estimated in the several inventories and statements referred to in the complaint, and the purpose of so estimating their value, the trial court has found in substance these facts : The corporation described was organized on or about the 22d of September, 1892, for the purpose of taking over the business of the firm of Keller Brothers & Blight and increasing the capital engaged therein; and the entire capital stock of

$50,000 was paid in before December 23d, 1892. In addition to assuming certain of the partnership obligations, the corporation paid to the partnership for its business and property $29,375.05, in accordance with an inventory of the date of September 22d, 1892, showing the value, as agreed upon, of the several items of the property purchased, entered in an inventory book which became the property of the corporation, and from the money so paid by the corporation, the partnership paid to the banking firm of Marsh, Merwin & Lemmon the sum of $29,000 borrowed from them by the partnership, as part of the arrangement for taking over said business.

The first alleged overvalued item of " patterns and scales, $15,155," which was one of the items of said inventory of September 22d, 1892, included the scales and patterns used in the manufacture of pianos, and the good-will of the partnership of Keller Brothers & Blight, and the above value was reached by considering the time and money expended upon the scales and patterns, and the extent and profitableness of the partnership business as a going concern ; and although the physical reproduction of these patterns and scales would not cost more than $1,000, the inventory valuation was a fair estimate of their value and of such good-will, for the purposes of the business in which the corporation was about to engage. The said sum of $29,375.05 was decided by the defendants to be a fair and reasonable value for said business as a going concern, and said directors exercised reasonable diligence in their examination of said property and in ascertaining its value, and said purchase was made honestly, in good faith, and without intent to gain any unlawful pecuniary advantage, and such purchase was not made with a wilful disregard of the interests of creditors of said company equivalent to actual fraud, nor did said directors in fact gain any unlawful pecuniary advantage by said transaction. " The capital stock of said corporation was not impaired in taking said patterns, scales and good-will at said inventory valuation, and the assets of the partnership transferred to the corpo-

ration were of the fair value of $29,375.05 over and above the amount of its liabilities."

The second alleged overvalued item, of "real estate," was one of the items of said inventory of September 22d, 1892, and what we have just said in relation to the finding of the court as to the purchase and valuation of the partnership property, and the alleged impairment of the capital stock thereby, is applicable to said second item.

The third alleged overvalued item, described in certain inventories and statements as "stock on hand" or "materials on hand" and "expense added to same," included the original cost of the raw material and its "*pro rata* share of the expense of conducting said business. The stock was at all times in various stages of manufacture, and expense of various kinds was constantly incurred in the conduct of the business, all of which was taken into account in making up the cost of the completed product, and was also taken into account in determining the value to said corporation, as a going concern, of the various parts included in 'stock on hand,' and entering into the make-up of a completed piano. . . . Said expense so added did, except for the item of dividends entering therein, fairly represent the increase in value to the corporation of the raw material over and above its original cost." In the inventory of July 1st, 1893, this item of stock on hand, $20,962.01, contained the items of material at cost, $11,755.41, and amount expended thereon $9,206.60. "The same methods were followed in arriving at the value of stock and material on hand in the subsequent statements and inventories, and the proportions of the expenses for material, labor and other expenses were determined with approximate correctness in each case."

The fourth item, of "accounts receivable," is not found to have been overvalued at any time. The trial court says that while it appears that a few of the accounts were in the hands of attorneys for collection, it does not appear that the directors were informed that any of them were bad.

The fifth item, of "scales, drawings," etc., is thus described in the finding: "In the 'accounts receivable' there

was included in the foregoing quarterly statements, as part of the assets, a portion of the expense of advertising the company's business at the ' World's Fair,' which portion, so included, amounted (as it appeared in the statement of December 30th, 1893) to $2,416.36. The original cost of advertising at the World's Fair was $3,500, and the including of this item of expense among the assets in these and subsequent statements and inventories was discussed, approved and authorized by the directors for the reason that said expense was incurred for the purpose of enlarging and as tending to enlarge the business of the company; and as the benefits thereof would extend over a number of succeeding years the directors decided that they should enter up a portion of the amount as an asset, charging it off from time to time annually thereafter, and they did thereafter charge off a portion of said expense." This action of the directors was taken " in the exercise of their honest judgment and discretion, and in so doing they acted in good faith and without any wilful disregard of the interests of the stockholders or creditors of the company, and without any intent to gain any pecuniary advantage thereby, and they did not gain any such advantage." In the inventory of July 1st, 1895, so much of World's Fair expenses as had not been charged off, appeared, and the surplus of $928.07, appearing by that inventory, was applied to the reduction of said item of " scales, drawings," etc.

Of said first item, the finding further states that " there was no reason, from the course of the business, to value the patterns, scales and good-will at any less than this item had been valued at the time of the purchase from Keller Brothers & Blight. The value of said item remained substantially the same down to about the time of the appointment of the receiver, and until the conduct of the business was stopped, and said item continued to be carried at the original valuation, to the knowledge and with the consent of the defendants. There was no impairment of the capital stock at any time consequent upon the valuation placed upon said item."

As to the remaining items the finding further says : " All

other items in said inventory of September 22d, 1892, and in all subsequent inventories and statements, were taken at their actual value to the corporation as a going concern, as nearly as the same could be ascertained by the use of reasonable diligence."

In conclusion the trial court says: "The inventories and statements hereinbefore referred to were made honestly, in good faith, and with an honest endeavor to state correctly the financial affairs of the defendant corporation, and none of the defendants, either by themselves or through their friends, directly or indirectly reaped any special pecuniary advantage out of the transactions hereinbefore referred to, other than the dividends paid as aforesaid. In all matters connected with the corporation affairs, and with the transfer from the partnership to the corporation, the defendants acted honestly and in good faith, and at no time did they place the values they did upon any of the items of said inventories or statements falsely or fraudulently, or with an intent to deceive any person or persons, nor were said values placed upon said items recklessly, with an intent to deceive, or under an unreasonable or groundless belief of the truth; and in all matters hereinbefore referred to the defendants exercised reasonable care and diligence in the performance of their duties. . . . Upon the foregoing facts I find that at no time prior to the payment of the last dividend was said corporation insolvent, nor, to the knowledge and belief of the defendants, was its capital stock impaired. . . . After paying the labor claims in full, and 30 per cent. of the general claims, . . . from $15,000 to $20,000 is necessary to pay the unpaid balance of said general claims in full, and to settle this estate."

From the time of its organization until the appointment of the receiver, May 22d, 1896, the company had a continuing outstanding indebtedness.

If these conclusions have been properly reached, they furnish abundant support for the decision of the trial court, that the plaintiff has wholly failed to establish the case stated in the complaint.

Section 1932 of the General Statutes of 1888, which was in force during the period covered by these transactions and when this action was commenced, provided that "no corporation shall declare any dividend while its capital is impaired; and all officers who shall vote in favor of declaring such dividend, in case such dividend is declared, knowing or having the means of knowing that such capital is impaired, shall be jointly and severally liable, in an action on this statute, for all losses resulting from said declaration of dividend, and be guilty of a misdemeanor." The provisions of this section appear in § 3340 of the General Statutes of 1902, with the additional one that all directors so voting, with such knowledge or means of knowledge, "shall be fined not more than five hundred dollars."

Whether upon the facts before us an action could have been maintained upon § 1932 (Rev. 1888), and if so, whether it could be maintained after the lapse of more than three years from the time the claimed right of action accrued, are questions we are not called upon to decide. As a second defense to both counts of the complaint, in so far as they described causes of action under § 1932, the defendants pleaded the provisions of § 1379 (Rev. 1888), that "no suit for any forfeiture, upon any penal statute, shall be brought, but within one year next after the commission of the offense." To this defense the plaintiff demurred upon the ground, in substance, that the cause of action described was not under the statute, but without questioning the sufficiency of the special defense as an answer to an action upon that statute. The court overruled the plaintiff's demurrer, upon the ground that the defendants might properly interpose that defense as an answer to any possible claim by plaintiff upon the trial, that the action was upon the statute. The plaintiff thereupon denied the allegations of said second defense, and they were found true.

Not having raised, in the trial court, the question of the sufficiency of the second defense as an answer to an action on the statute (§ 1932, Rev. 1888), the plaintiff cannot raise it here. It is true that the plaintiff complains in his reasons of

appeal of the action of the trial court in overruling the demurrer to the second defense, but not having questioned in his demurrer the sufficiency of the defense of said statute of limitations as an answer to an action upon § 1932 (Rev. 1888), and having claimed that the action was not based upon that statute, the ruling of the court upon the demurrer was not harmful to the plaintiff. After the filing of this demurrer, apparently no claim was made in the trial court that this was an action upon the statute.

Whether or not, in an action upon the statute—if the proof showed that the defendant directors voted for the payment of dividends without actual knowledge of the impairment of the capital—the plaintiff could recover without proving such negligence or misconduct of the directors as amounted to fraud or bad faith, the claim of the plaintiff, that the present action can be maintained without proof of fraud or bad faith upon the part of the defendants, cannot be sustained.

This action as originally brought contained but one count. The defendants, claiming that more than one cause of action was stated in a single count, moved that the plaintiff be required to separate the causes of action so stated, and also, after the complaint was separated into two counts, demurred upon the ground, among others, that a cause of action for improper and improvident diversion by the defendants of the funds of the company was wrongly joined in the same action with a cause of action for voting for the payment of dividends with a knowledge that the capital stock was impaired. The plaintiff, in compliance with an order of court, having first divided the original complaint into two counts, after the filing by the defendants of said demurrer, as a further compliance with the order of court, substituted therefor two new counts which were afterwards further amended by adding to each of said counts the allegations of fraud before stated.

Without questioning the right of a plaintiff to recover in certain cases upon proof of either one of two causes of action properly stated in a single count, neither of the two

counts in the present case can properly be regarded as stating two causes of action. As we interpret the language of the complaint each count describes but a single cause of action, namely, for a fraudulent diversion of the funds of the corporation, the principal difference in the two counts being that the payment of certain dividends described in one count is alleged to have been authorized by a vote of the board of directors, and the payment of the others to have been authorized by certain of the defendants without such vote. The allegations of knowledge by the defendants of the impairment of the capital, whether actual or constructive knowledge was meant, were plainly not intended as statements, in connection with the allegations of payment of dividends, of a cause of action other than for the fraudulent diversion of the company's funds. These allegations of knowledge are contained in the paragraphs alleging fraud and bad faith, and were manifestly intended as parts of the averments of fraud and bad faith. The trial court properly regarded the complaint as stating no other cause of action than the fraudulent conversion of the funds of the corporation.

The question of the effect of including in the statements of assets the expenses of advertising at the World's Fair became a question of good faith. As the court has found that the allegations of fraud are untrue, and that all the items complained of were entered in the statements and inventories in perfect good faith, the fact, if it be one, that this and possibly parts of other items should not, even if entered in good faith, have been treated and inventoried as assets, cannot affect the decision of this case.

For the purpose of proving, as against the defendant Lines, that the corporation in question was insolvent and its capital stock impaired, the plaintiff offered in evidence the record of the Court of Common Pleas in Fairfield County, in the case of Davenport, Receiver, v. said Lines, in which these facts were adjudicated. Since it is found that the defendants acted in good faith, and since this evidence did not affect the question of the alleged fraud or bad faith of

Lines, the ruling of the court excluding it did not injure the plaintiff.

For the purpose of proving that the real estate was overvalued in 1892 and thereafter, as alleged in the complaint, the plaintiff was asked what sum he received for it upon the sale by him as receiver. When and how this sale was made, and under what circumstances, the record does not disclose, and we therefore cannot say that the question was improperly excluded.

Whether or not, in the transactions described in the complaint, the defendants acted fraudulently or in bad faith, as alleged, was mainly a question of fact for the trial court. In so far as its conclusions upon that question are reviewable, we find no error in them.

Upon an examination of the evidence before us we find no reason for correcting the record, or for granting a new trial.

There is no error.

In this opinion the other judges concurred.