JOHN DAVENPORT, RECEIVER, *vs.* GEORGE O. LINES.

Third Judicial District, Bridgeport, April Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

In an action by a receiver to recover money claimed to have been illegally paid to a stockholder as dividends, the parties were at issue as to the financial condition of the company at the date of these payments. *Held* that evidence as to the way in which the capital stock was subscribed, paid for and invested, as to the market value of the plant purchased, the extent of the obligations assumed by the company and the correctness of its inventories and business statements, was relevant and admissible to show that the corporation was insolvent and its capital impaired when the payments in question were made.

The company had inventoried certain patterns and scales at $15,000, which included also the good will of the business of a partnership to which the corporation succeeded. The trial court found that the scales and patterns were not worth one half this sum, but made no finding as to the value of the good will for lack of any evidence on that subject. *Held* that for the purposes of the case the statement of the trial court must be regarded as a finding that the item in question was overvalued to the extent of at least one half the amount stated.

Another alleged asset, inventoried at $2,200, represented money expended in an exhibit of the company's product at the World's Fair at Chicago in 1893, for the purpose of advertising. The trial court found that this sum "represented no tangible asset." *Held* that this was equivalent to a finding that it had no value at the time and should not have been included among the assets.

The general rule is that dividends in a going concern can be properly declared and paid only out of profits and not out of capital or assets required for the security and payment of creditors. In accordance with this rule, which is recognized and enforced by § 1932 of the General Statutes, dividends paid to a stockholder and director who knew or had means of knowing that the corporation was then insolvent, may be recovered by its receiver so far as may be necessary to discharge its indebtedness.

Argued April 25th—decided August 1st, 1899.

ACTION by the receiver of a corporation to recover certain sums claimed to have been illegally paid to a stockholder by way of dividends, brought to the Court of Common Pleas in Fairfield County and reserved by that court, *Curtis, J.,* upon a finding of facts, for the consideration and advice of this court. *Judgment advised for the plaintiff.*

The complaint, as finally amended, alleged the formation of the corporation in 1892, substantially as set out in the finding; that the defendant became and remained a stockholder thereof until it went into the hands of the plaintiff as receiver; that prior to October 1st, 1894, it was insolvent, unable to pay its creditors, with its capital stock impaired, and has so remained ever since; that while in this condition it paid to the defendant certain sums of money as and for dividends upon his preferred stock; that such payments were made without authority and without consideration; that said sums so paid are required to pay the debts of the corporation; that the plaintiff had before suit requested the defendant to repay said sums, but he had refused to do so; and that the suit was brought by permission of the court by which the receiver was appointed.

The defendant demurred to the complaint, on the ground in substance that upon the facts therein set forth the plaintiff could not maintain the action. The court overruled the demurrer. The defendant then filed an answer consisting of three defenses.

The first defense admitted certain paragraphs of the complaint and denied the others; the second alleged in substance that the defendant received the money in question as dividends on his preferred stock, without knowledge of the in-

solvency of the corporation or that the payment was unauthorized; while the third alleged, in substance, that when the money was paid the corporation was solvent, and such payment upon preferred stock could be made without the same being authorized or declared by the board of directors.

The plaintiff demurred to the second and third defenses, and the demurrers were sustained.

The court found the following facts: "1. In September, 1892, a corporation was duly organized in Stratford under the name of The Keller Bros. & Blight Company. 2. The capital stock of said company consisted of $50,000, divided into shares as follows : 500 shares of common stock and 500 shares of preferred stock, each of the par value of $50 per share. 3. The corporation provided by by-laws that its affairs should be managed by 'not less than three nor more than five directors;' also that 'the preferred stock of this company shall be entitled to a preferred dividend quarterly or semi-annually, to be declared at the discretion of the directors, at the rate of eight per cent. per annum, such preference being cumulative.' 4. The total amount of said stock was subscribed for and paid in upon calls on or before December 23d, 1892. 5. Prior to the formation of this corporation a copartnership under the name of Keller Bros. & Blight was conducting a piano manufacturing business at Stratford. 6. Said copartnership of Keller Bros. & Blight had subscribed for 697 shares of the capital stock of said corporation. On September 22d, 1892, a business firm, one of whose members was a subscriber to said capital stock, loaned $29,000 to said copartnership. On September 24th, 1892, all of the subscribers paid 20 per cent as a first instalment; and said copartnership also paid, in full, from said $29,000 so loaned, so much of their stock subscription as equalled in par value said amount. 7. Said corporation purchased on or before October 3d, 1892, from said copartnership, the business and property of the same, and paid therefor the sum of $29,375.05. In this transaction F. W. Marsh acted as purchasing agent for the corporation. 8. By means of said $29,375.05 so received, said copartnership repaid said loan. The entire arrangement was intended by the

parties as a method of substituting the business and prop-
erty of said copartnership, at a valuation of $29,375.05, for
a like amount in par value of a stock subscription formally
paid in in cash.    9. The business and property of said copart-
nership was inventoried and valued as follows in this trans-
action : —

| | | |
|---|---|---|
| Stock on hand . . . . . | $10,936 | 88 |
| Fixtures and tools . . . . . | 2,332 | 75 |
| Patterns and scales . . . . | 15,155 | 00 |
| Real estate and buildings . . . | 11,332 | 77 |
| Cash . . . . . . . | 703 | 86 |
| Accounts receivable and guaranteed and made good . . . . . . | 6,560 | 97 |
| | $47,042 | 23 |

" The corporation assumed obligations as follows : —

| | | |
|---|---|---|
| Bills and accounts payable (including $4,900 mortgage on real estate) . . $16,087 68 | | |
| E. E. Magee acct. . . . 1,209 50 | | |
| Collateral acct. . . . 350 00 | | |
| | $17,647 | 18 |
| Net assets . . . . | $29,375 | 05 |

" 10. Evidence was offered by the plaintiff tending to show
that the real estate and scales and patterns were valued beyond
their market value at said sale.    11. I find that the real estate
and buildings were then worth said sum, for the same piano
manufacturing business to be conducted therein.    12. I find
that in the purchase of the scales and patterns at a valuation
of $15,155, both buyer and seller included in such valuation
the ' business ' or good will of the said partnership.    13. Said
patterns and scales are the patterns from which the various
parts of the piano are made, consisting of patterns made of
wood, iron, zinc and paper ; each set of patterns and scales
producing, when followed, a particular kind of piano.    14. The
patterns and scales herein mentioned produce the various

pianos known as the Keller Bros. & Blight piano. There were three sets of scales and patterns. They were made and perfected by said Keller Bros. & Blight after years of experience, trial and experimenting, and were particularly adapted to the class of pianos which they manufactured, and were well known and favorably received in the market where their pianos were sold. 15. Copies of scales and patterns for the manufacture of pianos can be purchased at a price varying from $100 to $250, but such scales and patterns have not been perfected by manufacturing from them and noting the product. 16. A skilled mechanic can take a piano and from it produce scales and patterns from which similar pianos can be manufactured, but in perfecting the same by producing pianos therefrom several hundred or several thousand dollars may be expended. 17. The scales and patterns herein mentioned were not patented or copyrighted. 18. The Keller Bros. & Blight piano was one of the class of moderate priced pianos. 19. No evidence was offered tending to show the value of the 'business' or good will of said copartnership before or at the time of the sale to said corporation. 20. I am unable to find whether or not the said patterns and scales, together with the good will of said partnership business, were worth $15,155. I find that the mere scales and patterns were not worth one-half that sum. 21. On July 1st, 1894, the inventory of said corporation was as follows:—

*Assets.*

| | | |
|---|---:|---:|
| Stock on hand, material | | $ 9,650 94 |
| Expenses thereon | | 8,992 44 |
| Fixtures, tools and machinery | | 4,591 63 |
| Scales drawing | 15,155 00 | |
| | 2,229 24 | 17,384 24 |
| Real estate | | 13,223 36 |
| Cash | | 334 50 |
| Notes | | 305 00 |
| Open accounts | | 15,442 40 |
| | | $69,924 81 |

*Liabilities.*

| | | |
|---|---|---|
| Bills payable . . . | $13,414 25 | |
| Mortgage on real estate . . | 4,900 00 | |
| Capital stock . . . | 50,000 00 | |
| Surplus . . . . . | 1,610 56 | $69,924 81 |

"21½. During the year ending July 1st, 1894, 370 pianos were sold, the material in which cost $25,689.82.  22. In determining said assets the real estate was taken at its cost, $11,332.77, and the cost of certain additions to the building was added thereto, making the above sum.  23. To the sum paid for the scales and patterns the sum of $2,229.24 was added, being money expended in an exhibit at the World's Fair at Chicago in 1893, for the purpose of advertising. Said sum represented no tangible asset.  24. In the item 'stock on hand,' the materials on hand were actually inventoried and found to be worth $9,650.94.  The expenses to date not apportioned to the products sold but apportioned to the material on hand, were valued at $8,992.44.  I find that said sum represents the balance of the expenses from the last inventory, after applying a portion thereof, to wit: $26,834.90, to the pianos since completed and sold.  25. In apportioning said expenses, I find that the expenditures for the preceding year, plus the expenditures found to have been previously incurred on material on hand at the beginning of the preceding year, were distributed by estimation between the pianos sold during the year and the stock on hand when the inventory was made, approximately in proportion to the value of the materials in the pianos sold and the value of the materials on hand.

"26. On July 1st, 1895, the inventory of said company was as follows:—

*Assets.*

| | | |
|---|---|---|
| Stock material . . . | $12,745 90 | |
| Expenses . . . | 12,252 45 | $24,998 35 |
| Fixtures, tools and machinery . . . | | 4,040 52 |
| Scales, drawings and patterns . . | | 17,344 11 |
| Amount carried forward . . | | $46,382 98 |

Davenport, Receiver, *v.* Lines.

| | |
|---|---:|
| Amount brought forward . . | $46,382 98 |
| Real estate . . . . . . | 13,226 66 |
| Cash . . . . . . . . | 460 50 |
| Notes . . . . . . . | 805 00 |
| Open accounts due . . . . | 16,214 48 |
| | $77,086 62 |

### *Liabilities.*

| | |
|---|---:|
| Bills payable (4 months to run) . . | $15,236 47 |
| Accounts payable (open), includes | |
| dividends and balances . . . . | 6,022 08 |
| Mortgage on real estate . . . . | 4,900 00 |
| Capital stock . . . . . | 50,000 00 |
| Surplus to scale account . . . | 928 07 |
| | $77,086 62 |

"26½. During the year ending July 1st, 1895, 386 pianos were sold, the materials in which cost $27,007.48. 27. The real estate and scales account, and material and expenses items, were determined in the manner set forth in paragraphs 22 to 25 of this finding. 28. On May 22d, 1896, the plaintiff was duly appointed receiver of said company. 29. If upon the foregoing facts said company was insolvent, or its capital stock impaired at the time said inventories were taken, or either of them, I find that it remained insolvent, or with its capital stock impaired thenceforth, until it went into the receiver's hands. 30. There appear in the books of said company statements of its condition made quarterly. When these were made no inventory of material was taken except in June and December, and the amount of material and the apportionment of expenses were made by estimation, except in the July and January statement. The other items were determined in the manner set forth in paragraphs 22 to 25 of this finding. 31. I find that there were credited on the books of said company to the defendant, as the holder of 72 shares of preferred stock, Dec. 10, '94, $72, Dec. 26, '94, $72, March 22, '95, $72, June 1, '95, $72, Sept. 24, '95, $72, Jan. 1, '96, $72, March 23, '96, $72, and proportionate sums on said

dates to the other holders of the preferred stock of said company. 32. The credits were settled in part by two notes of said company, dated and given to the defendant on January 23d, 1896, one of which for $225 was payable March 13th, 1896, and the other for $135 was due May 13th, 1896. These notes were paid respectively on March 10th, 1896, and on May 13th, 1896. 33. In the record book of said corporation no record of a directors' meeting appears at which dividends were authorized and voted after July 18th, 1894. 34. Said sums were credited to the preferred stockholders as follows : . . . . 35. Joseph Keller, Charles Keller, Wm. M. Blight, F. M. Marsh, and G. O. Lines, the defendant, were the directors of said corporation from its organization until it went into the receiver's hands, except that on January 13th, 1896, Joseph Keller resigned and no one was substituted in his place. 36. Said Kellers attended to the manufacturing, being practical piano makers. Said Blight managed the office business, being secretary and treasurer of the company. Said Marsh and Lines were business men in Bridgeport. 37. Said sums referred to in paragraph 31 were credited to the preferred shareholders as follows : Said Blight called attention of said Marsh and Lines, separately, at their places of business, to the said quarterly statements; they there separately agreed with him that dividends had been earned and should be declared to the amount of said credits. He thereupon returned to the factory and spoke to one or both of the Kellers about them. The Kellers did not think said dividends had been earned and never agreed that said dividends should be paid, but thought that as the preferred stock was entitled to cumulative dividends, it was wise to enter them on the books of the company as obligations due to the preferred stockholders, to be paid when conditions warranted. These talks were informal. Said Blight thereupon entered said sums to the credit of said stockholders. No corresponding debit entries were made. 38. Said dividends were not otherwise authorized or voted by the directors of said company when so entered at said dates. 39. After said Joseph Keller resigned on January 13th, 1896, the remaining four directors met at

the factory and decided to give notes to the preferred stock-holders upon the credits given to them as aforesaid, and in pursuance thereof said notes were given.  40. When said company went into the hands of the receiver on May 22d, 1896, the accounts due said company amounted to over $14,000. The receiver had been able to collect but about $6,000 of the same at the time of the trial, and stated that he does not expect to be able to collect more than $100 or $200 more; his information being obtained from attorneys in whose hands he had placed most of said accounts.  41. On May 22d, 1896, the indebtedness of said company was $30,819.34, of which $4,900 was secured by mortgage upon the real estate of said company, being the mortgage referred to in paragraph 9. From the assets which came into the receiver's hands he has not realized sufficient funds to pay the indebtedness of said company, and more than $2,697 is required therefor. 42. Upon the $3,500 credited to the preferred stockholders after July 1st, 1894, $2,697 was actually paid to them. 43. If it is proper to infer it from the foregoing facts, I find that said company was insolvent and its capital stock impaired when said notes were given. . . . 45. Upon the trial of this action, upon the pleadings on file, the defendant objected to any evidence tending to prove the facts set forth in paragraphs 6 to 18, 21 to 26, 33, 40 and 41.  In so far as said objections are well taken, the facts therein should be disregarded."

All the questions arising upon this record were reserved for the advice of this court.

*George P. Carroll,* for the plaintiff.

*John C. Chamberlain* and *Alfred B. Beers,* for the defendant.

TORRANCE, J.  In the trial court the defendant objected to any and all evidence tending to prove certain facts found, as set out in paragraph 45 of the finding.  This objection is without merit.  The plaintiff was entitled to prove the facts objected to, by any legitimate evidence, as bearing upon the

question of the insolvency of the corporation, and upon the question whether its capital was impaired when the money in question was paid. Upon both of these questions all the facts objected to were relevant and admissible.

One of the important questions in the case is whether, upon the facts found, the corporation was insolvent and its capital stock impaired when the money in question was paid; and its solution depends upon the further question whether certain items included among the assets of the corporation in its inventories of July 1st, 1894 and 1895, were rightfully so included at all, or were rightfully so included at the amount stated in the inventory.

The inventory of July 1st, 1894, showed a surplus of $1,610.56. This result was reached by including among the assets three items, one of which the plaintiff. claims is largely overvalued, and two of which he claims should not be included at all.

The first is the pattern and scales account, inventoried at $15,155. This was the value placed upon the patterns and scales when bought by the corporation at its organization, as stated in the finding, in October, 1892. This valuation as then made included the "business" or good will of the copartnership from which the patterns and scales were bought. Assuming for the purposes of the argument that the "good will" of the copartnership might be purchased and included as part of the assets of the corporation when it was organized, and that the good will and the patterns and scales together were at that time worth the price paid for them, it does not follow that that valuation continued the same down to July 1st, 1894. The court finds that in July, 1894, the patterns and scales themselves were not worth one half of the sum at which they were then inventoried; and it cannot find and fails to find what the "good will" was worth, as no evidence appears to have been offered upon that subject. This, we think, for the purposes of this case, must be regarded as a finding that this item was overvalued in the inventory to the extent of at least one half of the amount there stated.

One of the other items charged as an asset was the sum of

$2,229.24, which represented money expended in an exhibit at the World's Fair in Chicago in 1893 for advertising purposes. "Said sum represented no tangible asset." This expenditure may or may not have increased the business of the corporation, but the court has failed to find that as an asset it had any value, and this is equivalent to a finding that it had none at that time, and ought not to have been included among the assets.

In this view of the case the corporation, in July, 1894, was insolvent and its capital stock impaired, without reference to the other item to which the plaintiff objects, and which therefore need not be specially considered. Suffice it to say, that upon the facts found we think this last item, expenses on material on hand, amounting to $8,992.44, ought not to be included among the assets. The inventory of July 1st, 1895, was made up in substantially the same way as to these three items as that of 1894, and showed substantially the same condition of things as to insolvency and impairment of capital stock.

Upon the facts set forth in the record, then, the trial court has, in effect, found that the corporation, when the money here in question was paid to the defendant, was in fact insolvent and its capital stock impaired, and has expressly found that it so continued until the receiver was appointed.

The remaining question is whether the money paid to the defendant under the circumstances set forth in the record can be recovered back in this action. We think it can be. The defendant claims that he received this money in the shape of dividends which had been, in effect, regularly declared by the board of directors at a regular and lawful meeting. The record does not perhaps support this claim, but for the purposes of the discussion we will assume it to be true.

The general rule, even in the absence of any statute on the subject, is that dividends, in a going concern, can be properly declared and paid only out of profits, and not out of capital, or assets required for the security and payment of creditors. Morawetz on Private Corporations (1st ed.), § 344; Redfield

on Railways, § 240; 2 Thompson on Corporations, § 2152. This rule applies whether the stock upon which the dividend is declared is common stock or, as in this case, preferred stock. *Warren* v. *King*, 108 U. S. 389; *Cotting* v. *New York & N. E. R. Co.*, 56 Conn. 156–169.

In addition to this our statute expressly says that "no corporation shall declare any dividend while its capital stock is impaired," and makes the officers voting in favor of such dividend, "knowing or having the means of knowing that such capital is impaired," liable for all losses resulting from such declaration, and their action in so voting is made a misdemeanor. General Statutes, § 1932.

The dividends here in question were declared and paid when the corporation was insolvent and its capital stock impaired, and were thus declared and paid in direct violation of these legal principles and of this statutory enactment. The money paid to the defendant in the form of dividends was wrongfully paid to the prejudice of the creditors of the corporation, to one who was not only a stockholder of the corporation but was also a director therein from its organization until it went into the hands of the receiver. Its condition when the dividends in question were declared and paid was clearly shown upon its books, inventories and quarterly statements; and it is expressly found that the attention of the defendant was specifically called to its financial condition as it appeared upon its books, at the very-time these dividends were declared and paid. It thus appears that the defendant, when he participated in the declaration and payment of these dividends, and when he accepted them in payment, knew or had the means of knowing that the money really and in fact belonged to the creditors of the corporation, because it was required for the payment of their claims, and could not legally be paid away under the form of a dividend, to one standing in his position. Under these circumstances the money paid to the defendant was part of a trust fund which belonged to the creditors of the corporation, to which he could acquire no title as against them, because he took it without consideration and with full knowledge of the trust which existed in

their favor. The plaintiff in this case, as the representative of the creditors of the corporation, is entitled to sue for and recover back the money so paid. *Crandall* v. *Lincoln*, 52 Conn. 73; *Greene* v. *Sprague Mfg. Co.*, ibid. 330.

The court of Common Pleas is advised to render judgment for the plaintiff to recover the dividends paid to the defendant, with interest from the respective dates of payment.

In this opinion the other judges concurred.