SPENCER et al. v. SMITH et al.

(Circuit Court of Appeals, Eighth Circuit. December 10, 1912.)

No. 121, Original.

1. CORPORATIONS (§ 566*)—CAPITAL STOCK—"TRUST FUND"—CONTRACTS BETWEEN STOCKHOLDERS.

The assets of a corporation represented by its capital stock are a trust fund for the payment of its debts; and hence stockholders may not legally agree among themselves that such fund shall be appropriated by them or some of them as against the claims of corporate creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*

For other definitions, see Words and Phrases, vol. 8, p. 7127.]

2. CORPORATIONS (§ 566*) — STOCKHOLDERS — PREFERRED STOCK — SECURITY — RIGHTS.

Corporate preferred stock guaranteed 10 per cent. out of net profits reserved to the corporation the right to redeem after a specified date, bound it to redeem before a later date, and provided that the holders, on failure to pay dividends, might foreclose a trust·mortgage given to secure the stock on all the corporation's property, in which the stockholders were entitled to participate ratably. *Held*, that the provision for a preference of $11 per share to the holders referred only to a distribution of assets as between stockholders, without reference to the distribution of assets for the payment of debts, and that the holders of such preferred stock were stockholders, and not creditors of the corporation, and were entitled to a preference only as between themselves and the holders of the common stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*

Preference by insolvent corporation to officers and stockholders, see note to Ellsworth v. Lyons, 104 C. C. A. 8.]

3. CORPORATIONS (§ 566*)—PREFERRED STOCKHOLDERS—PREFERENCE RIGHTS.

A provision in the certificates of preferred stock of a corporation that the stockholders should be entitled to a preference in the distribution of assets, if construed as referring to a distribution of assets to pay debts, would be against public policy and void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*]

4. CORPORATIONS (§ 627*)—PREFERRED STOCKHOLDERS—RIGHT TO DIVIDENDS—SECURITY—MORTGAGE.

Rights of preferred stockholders in the distribution of profits and in the distribution of the corporation's assets after payment of debts may be secured by mortgage.

[Ed. Note.—For other cases, see Corporations, Cent. Dig § 2476; Dec. Dig. § 627.*]

Petition for Revision of Proceedings of the District Court of the United States for the District of Colorado, in Bankruptcy;. Robt. E. Lewis, Judge.

In the matter of bankruptcy proceedings of the Fifty Gold Mines Corporation. On petition of Fermor J. Spencer, trustee in bankruptcy, to revise in matter of law a judgment of the District Court (190 Fed. 105), adjudging the owners of certain certificates of stock to be preferred creditors, and not stockholders. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. L. Bennett, of Colorado Springs, Colo. (J. E. Robinson, of Denver, Colo., and Henry C. Hall, of Colorado Springs, Colo., on the brief), for petitioners.

Charles H. Haines, of Denver, Colo. (Harry E. Kelly, of Denver, Colo., on the brief), for respondents.

Before SANBORN and CARLAND, Circuit Judges, and W. H. MUNGER, District Judge.

CARLAND, Circuit Judge. This is a petition to revise in matter of law a judgment of the United States District Court for the District of Colorado adjudging the owners of certain certificates of stock of the Fifty Gold Mines Corporation, a bankrupt, to be preferred creditors, and not stockholders. The case in which the judgment was rendered arose as follows:

June 6, 1911, Fermor J. Spencer, as trustee in bankruptcy of the above-named bankrupt, filed with the referee in bankruptcy a petition asking that a certain deed of trust executed by said bankrupt corporation February 20, 1906, whereby said bankrupt corporation conveyed all of its real estate to the Empire Trust Company of New York City to secure an issue of $1,000,000 of the preferred stock of said bankrupt corporation with certain guaranteed dividends, be declared null and void. At the same time the Corporation Trust Company of New Jersey, which, as trustee, was the grantee in a certain other deed of trust executed by said bankrupt corporation to secure certain bonds, filed a similar petition.

Thereupon, the referee caused a hearing to be had, after due notice to all persons interested, and at said hearing William K. Smith, George M. Griswold, Wells Campbell, Fred B. Farnsworth, Robert E. Menrose, and Frank Armstrong, being beneficiaries and holders of the preferred stock mentioned in the above deed of trust to the Empire Trust Company, appeared by counsel in opposition to the prayer of the petition. On said hearing, the following facts appeared:

The Fifty Gold Mines Corporation was incorporated under the laws of Colorado November 9, 1905. Its articles of incorporation provided for seven directors, and that the capital stock should be $3,000,000, to be divided into 300,000 shares of $10 each; 100,000 shares being preferred stock and 200,000 shares being common stock. The board of directors held its first meeting on January 3, 1906, at which meeting each of the directors subscribed and paid for one share of the common stock of the corporation. At this time, O. B. Thompson was the owner of property afterwards conveyed to the corporation which was worth, according to Thompson's undisputed testimony, $3,000,-000. January 3, 1906, he made a proposition to the corporation which was submitted to the stockholders at a meeting held that day. The proposition was in writing, and by it Thompson offered to convey all this property to the corporation upon the issuance and delivery to himself or order of the entire amount of unsubscribed capital stock of the corporation. This included all the stock of the corporation, both preferred and common, excepting the seven shares issued to the directors. The offer also provided that the corporation should execute a first-

mortgage lien upon the property to be conveyed to it to secure the preferred stock, the language upon this point being that the mortgage should provide therein that it was executed for the sole and exclusive purpose of guaranteeing to the holders of the preferred stock of said corporation that all and each of the provisions contained therein should be fully and promptly complied with. The offer further contained an agreement upon the part of Thompson that he would place the preferred stock in the hands of a trustee under an agreement that out of the proceeds of the sale thereof a certain percentage should be paid over to the treasurer of the corporation. This proposition was duly accepted at stockholders' and directors' meetings. At a directors' meeting held on the same day a resolution was passed instructing the officers of the corporation to issue and file with the Secretary of State a certificate that the capital stock of the corporation had been fully paid. This certificate was executed January 3, 1906, and was filed about the same time. Under and by virtue of the agreement so made and accepted, Thompson conveyed the property now held by the trustee in bankruptcy to the corporation, and received from it the deed of trust above mentioned and a certificate for the shares of the preferred stock referred to therein. Thompson placed this preferred stock in the hands of certain agents in New York City for sale. Sixty-five thousand dollars worth of said stock was sold to various parties, and the proceeds thereof were distributed as follows: One-fourth to the agents making the sales for commissions; one-half to Thompson; and one-fourth to the corporation. Afterwards, in consideration of the increase of the capital stock to $10,000,000, Thompson surrendered to the corporation all of the unsold preferred stock so issued to him. Up to the time of the bankruptcy proceedings, the corporation had taken up and canceled of the $65,000 of preferred stock sold as aforesaid, all but between $31,000 and $32,000. Dividends thereon to the extent of $8,000 or $9,000 were unpaid at the time of the hearing before the referee, but the corporation made no profits out of which these dividends could be paid.

The certificate of preferred stock issued to Thompson was in the following language:

"This is to certify that O. B. Thompson is the owner of one hundred thousand (100,000) shares of the preferred capital stock of the Fifty Gold Mines Corporation, fully paid and nonassessable and transferable only by entry on the books of the corporation, upon surrender of this certificate properly indorsed.

"The preferred stock is entitled to cumulative dividends of ten (10) per cent. per annum, payable quarterly, commencing April 1st, 1906, from the net profits of the corporation before any dividends are paid on the common stock and the common stock is entitled to all dividends in excess of said ten (10) per cent. In the event of the dissolution of the corporation, or a distribution of its assets, the preferred stock outstanding at that time shall first be paid at eleven ($11.00) dollars per share, plus all accumulated unpaid dividends, and the remainder of the corporate assets shall be divided ratably among the holders of the common stock.

"The owner of unredeemed preferred stock, may at his option exchange the same at any time for common stock of the corporation, share for share. The voting power at any stockholders' meeting is confined exclusively to owners of common stock.

"The Fifty Gold Mines Corporation reserves the right to redeem any number or all of its certificates of preferred stock at eleven dollars ($11.00) per share, plus all accumulated unpaid dividends at any time after January 1st, 1911, and to determine by lot which certificates shall first be redeemed, and said corporation expressly agrees to redeem all its preferred stock on or before January 1st, 1916. A failure of said corporation for a period of ninety days to pay any quarterly dividend hereon, after the same becomes due and payable, shall render the corporation in default as to such payment, and thereby entitle the owner of this certificate to a foreclosure of the mortgage securing the same.

"As a guarantee that the Fifty Gold Mines Corporation will promptly pay all dividends upon its preferred stock and redeem the same in strict accordance with the provisions of this certificate, said corporation has made, executed and delivered to the Empire Trust Company of New York City, N. Y., as trustee, a first-mortgage lien upon all its property in the amount of $1,000,-000.00 in which security all owners of preferred stock participate ratably.

"This certificate is not valid until countersigned by the Empire Trust Company of New York City, N. Y.

"Witness the seal of the corporation and the signature of its duly authorized officer this 3rd day of January, A. D. 1906.

"The Fifty Gold Mines Corporation,
"By Thomas Fielding, President,
and J. L. Fielding, Treasurer.

"Countersigned and registered:
    "The Empire Trust Company, by ——————."

The trust deed securing the preferred stock contained the following, among other provisions:

"That whereas, the said mining company, acting within the scope of its corporate powers, is engaged in the operation of certain mines and mills and in the tramming, milling and reduction of ores in the county of Gilpin, state of Colorado, and for that purpose is fully vested with all necessary powers, rights and privileges, and has a total capital stock of three million (3,000,000) dollars, divided into two hundred thousand (200,000) shares of common stock of the par value of ten dollars ($10) each, and one hundred thousand shares (100,000) of preferred stock of the par value of ten dollars ($10) per share, all of which capital stock has been issued, said preferred stock being evidenced by one certificate for one hundred thousand (100,000) shares of ten dollars ($10) each, and which said certificate of preferred stock, among other things, provides for the payment of a dividend of ten per cent. (10%) per annum thereon, payable quarterly, commencing April 1st, A. D. 1906, and

"Whereas, the said mining company, at and by its said meeting of stockholders held January 3rd, A. D. 1906, did fully authorize and direct the making of a mortgage or deed of trust, conveying all its real estate and mining, milling and tramming properties in the county of Gilpin, in the state of Colorado, together with all buildings and improvements thereon, easements and rights of way, ditches and ditch rights, water and water rights, with all improvements and appurtenances, for the purpose of securing the payment of the said dividend in said preferred stock provided, and for the purpose of securing and guaranteeing the faithful performance of each and every of the covenants in said preferred stock mentioned, which vote of the stockholders was taken by ballot, as required by law; and the proceedings of said meeting were duly entered of record in the minute book of said mining company  *  *  *

"Now therefore, for and in consideration of the premises and of the sum of ten dollars, lawful money of the United States, to said mining company, paid by said trustee and for other good and valuable considerations, the receipt and sufficiency of which are hereby confessed, and in execution of the powers in this behalf conferred by law, and in order to secure the payment of said certificate of preferred stock and also to secure equally and ratably the payment of the dividends in any and all such certificates of preferred stock as shall be issued from said certificate hereinabove set forth, as well as to secure the faithful keeping and performances of each and every of the terms,

covenants and conditions of said preferred stock, whether issued contemporaneous with the execution of this mortgage or hereafter duly issued out of or from said above named certificate, the said the Fifty Gold Mines Corporation has granted, bargained, sold, conveyed, assigned, transferred and delivered and by these presents does hereby grant, bargain, sell, assign, transfer and deliver to the said the Empire Trust Company and to its successor or successors in trust hereby created, its and their assigns forever, all of the following described property, real and personal, situate in the county of Gilpin, state of Colorado, to wit:  *  *  *

"To have and to hold the above-described premises together with every right and privilege, usually had and enjoyed therewith unto the said second party, trustee, and to its successors in said trust forever.

"In trust, however, for the following purposes, to wit: That the same shall be held as security for the payment of the cumulative dividends in said certificate of preferred stock provided, and for the equal pro rata benefit and security of the several respective holders of said certificates of preferred stock in the event of the issuances thereof as above provided, without preference or priority of one certificate over another, upon the following express trust, uses and purposes.

"It is hereby mutually covenanted and agreed between the parties hereto, that if the said first party shall well and faithfully pay all of said cumulative dividends on said preferred stock when the same fall due, as herein expressed, and shall provide for and pay the said dividends as they severally fall due, and according to the tenor and effect of said certificate or certificates, and shall well and faithfully keep and perform all the other covenants contained in said certificate or certificates of preferred capital stock, and this deed, on its part to be kept, then this deed shall be void and the property hereby conveyed shall be released to the first party, its successors and assigns."

On this state of facts the referee decided that the deed of trust given to the Empire Trust Company to secure the holders of said preferred stock of said corporation was null and void both as to secured and unsecured creditors of the corporation, and as to the trustee, for the reason that the transaction was against public policy. The beneficiaries under the trust deed hereinbefore mentioned caused the ruling of the referee to be certified to the United States District Court, and thereafter on May 2, 1911, the findings and order of the referee were overruled, and the referee was directed to allow the claims of the holders of the preferred certificates as preferred claims against the bankrupt estate.

The certificate of preferred stock evidenced a contract between the stockholders of the corporation. Stockholders may make such contracts between themselves as are not contrary to law or against public policy. The contract which the stockholders intended to make in issuing the stock in question must be determined from the language of the stock itself, taken in connection with the articles of incorporation. As the corporation made no profits, the present holders of the preferred stock have no claim for dividends. The only claim they have arises from that provision of the certificate of stock which provides that, in the event of a distribution of the assets of the corporation, the preferred stock outstanding at that time shall first be paid at $11 per share, and the remainder of the corporate assets shall be divided ratably among the holders of the common stock. The question now presented is: Are the present holders of outstanding preferred stock creditors of the corporation, or are they simply preferred stockholders? If they are creditors, they have a secured claim

against the bankrupt estate. If they are preferred stockholders, then the above provision is valid as against the holders of common stock, for the preference in the distribution of assets was a matter concerning which the stockholders could lawfully agree as between themselves. If, however, the provision giving a preference in the distribution of assets to the preferred stockholders is sought to be upheld as against creditors of the corporation, it must fail as being against public policy and therefore void.

[1] The assets of a corporation represented by its capital stock are a trust fund for the payment of its debts, and the law will not permit stockholders to agree among themselves that this trust fund shall be appropriated by them or some of them as against the claims of creditors.

[2, 3] We are therefore of the opinion that the present holders of the preferred stock of the corporation are not creditors thereof, but stockholders; that the provision contained in the certificate of preferred stock, giving a preference of eleven dollars per share to the holders thereof, refers only to the distribution of assets as between stockholders, and has no reference to the distribution of assets for the payment of the debts of the corporation; that, if by any interpretation it could be construed as referring to the distribution of assets to pay debts, then it is void as being against public policy. These views are sustained by an examination of the certificate of stock and the decisions of the courts. What parties to a contract may call it, of course, is not binding upon the courts if it is clearly something else. Still, in arriving at the intention of the parties, we may look to the language which they used in reducing their contract to writing.

In the articles of incorporation, in the stock itself, and in the mortgage, the stock in controversy is called "preferred stock." There is no evidence that any party concerned in the issuance of the stock thought that it was anything else. There is no provision in the certificate of preferred stock which, if properly construed, is not appropriate to such a certificate. After issuing the preferred stock, the corporation owed Thompson nothing for the property conveyed by him to it. He transferred his property to the corporation in payment for its stock, and the corporation issued the certificate of preferred stock in payment for the property.

[4] If thereafter the corporation made profits, the holder of any preferred stock would receive dividends; and, if at any time the corporation was dissolved and its assets were distributed, the preferred stock would be preferred as against the common stock. The performance of this agreement could be and was secured by mortgage. This view renders the transaction reasonable and valid.

Generally speaking, at the present time, although formerly there was some doubt and discussion, the law is clearly settled that a preferred stockholder is not a corporate creditor. Cook's Corporations (6th Ed.) § 271; 2 Clark and Marshall on Private Corporations, pp. 1313–1317; Grover v. Cavanagh, 40 Ind. App. 340, 82 N. E. 105. In Hamlin et al. v. Toledo, St. L. & K. C. R. Co., 78 Fed. 664, 24 C. C. A. 271, 36 L. R. A. 826, Circuit Judge (now Justice) Lurton, in

holding certain preferred stockholders not to be creditors, used the following language:

"One cannot well be a creditor as respects creditors proper and a stockholder by virtue of a certificate evidencing his contribution to the capital of the corporation. Stock is capital, and a stock certificate but evidences that the holder has ventured his means as a part of the capital. It is a fixed characteristic of capital stock that no part of it can be withdrawn for the purpose of reimbursing the principal of the capital stock until the debts of the corporation are paid. These principles are elementary. Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789 [27 L. Ed. 769]; Cook, Stock, Stockh. & Corp. Law (3d Ed.) § 271. The chance of gain throws on the stockholder, as respects creditors, the entire risk of the loss of his contribution to capital. 'He cannot be both a creditor and debtor by virtue of his ownership of stock.' Warren v. King, supra. If the purpose in providing for these peculiar shares was to arrange matters, so that, under any circumstances, a part of the principal of the stock might be withdrawn before the full discharge of all corporate debts, the device would be contrary to the nature of capital stock, opposed to public policy, and void as to creditors affected thereby. Cook, Stock, Stockh, & Corp. Law (2d Ed.) §§ 270, 271; Chaffee v. Railroad Co., 55 Vt. 110; McCutcheon v. Capsule Co., 19 C. C. A. 108–115, 71 Fed. 787 [31 L. R. A. 415]; Morrow v. Steel Co., 87 Tenn. 262, 10 S. W. 495 [3 L. R. A. 37, 10 Am. St. Rep. 658]. If that was the purpose of this arrangement, most doubtful language was employed. There is a sense in which every shareholder is a creditor of the corporation to the extent of his contribution to the capital stock. In that sense every corporation includes its capital stock among its liabilities. But that creditor relation is one which exists only between the corporation and its shareholders. It is a liability which is postponed to every other liability, and no part of the capital stock can be lawfully returned to the stockholders until all debts are paid or provided for. The violation of this well-understood principle is a breach of trust, and a creditor affected thereby may pursue the stockholders, and recover as for an unlawful diversion of assets."

Preferred stock of a railroad company is not an indebtedness which can be considered in determining whether its obligations are such as to prevent its operating a passenger train separately from its freight trains. People ex rel. W. S. Cantrell et al. v. St. Louis, A. & T. H. R. Co., 176 Ill. 512, 52 N. E. 292, 35 L. R. A. 656.

The following cases support the general proposition that holders of preferred stock are not corporate creditors: Mercantile Trust Co. v. Bal. & O. R. Co. et al. (C. C.) 82 Fed. 360; Belfast & Moosehead Lake R. Co. v. City of Belfast, 77 Me. 445, 1 Atl. 362; Burch v. Cropper, 14 App. Cases, 525; Field v. Lamson & Goodnow Mfg. Co., 162 Mass. 388, 38 N. E. 1126, 27 L. R. A. 136; Taft v. Hartford, Providence & Fishkill R. Co., 8 R. I. 310, 5 Am. Rep. 575; Chaffee v. Rutland R. R. Co., and Trustees, 55 Vt. 110; Davenport, Rec., v. George O. Lines, 72 Conn. 118, 44 Atl. 17; Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789, 27 L. Ed. 769; Guaranty Trust Co. v. Galveston City R. Co., 107 Fed. 311, 46 C. C. A. 305.

The case of Miller, Executor, v. Ratterman, Treasurer, 47 Ohio St. 141, 24 N. E. 496, is very instructive on the point under consideration. In deciding that the holders of certain preferred stock secured by mortgage were not creditors, the court used the following language:

"The relation of a holder of preferred stock is, in some of its aspects, similar to that of a creditor, but he is not a creditor save as to dividends after the same are declared. Nor does he sustain a dual relation to the corporation. He is either a stockholder or a creditor. He cannot, by virtue of the same

certificate, be both. If the former, he takes a risk in the concerns of the company, not only as to dividends and a proportion of assets on the dissolution of the company, but as to the statutory liability for debts in case the corporation becomes insolvent. 'If the latter, he takes no interest, in the company's affairs, is not concerned in its property, or profits as such, but his whole right is to receive agreed compensation for the use of the money he furnishes, and the return of the principal when due. Whether he is one or the other depends upon a proper construction of the contract he holds with the company. It is said that 'a mortgage creditor, although denominated a preferred stockholder, is a mortgage creditor nevertheless; and interest is not changed to dividend by calling it a dividend.' 'The question is not, what did the parties call it, but what do the facts and circumstances require the court to call it.' The aptness of this language arises in a case where it has been determined that such holder is a creditor. It may not furnish material aid in ascertaining the fact whether he is such or not. However, what the parties in the given case have called the subject of the contract is of no little significance in determining their purpose, and, when that purpose is ascertained, it is of much importance in giving construction to the contract. The object of all rules of construction is to arrive at the meaning of the parties. What was the object to be accomplished? What did the parties intend, and are the means taken in harmony with that intent, and with the law applicable to the subject? These are questions addressed to the court in this case, and when answered the case is decided.

"As supporting the claim that it was not stock that was issued but certificates of indebtedness, special attention is called in argument to those portions of the certificates which provide that holders shall not vote upon them at any meeting of the holders of the capital stock of the company; that the rights of the holders to the dividends are guaranteed, and are to be secured by mortgage on the property, rights, and income; that no further or other mortgage shall thereafter be made to the prejudice of the holders of the preferred stock; that the dividends are guaranteed by the Cincinnati, Hamilton & Dayton Company, which company had executed a mortgage to Stanley Matthews, trustee, to secure the payment of dividends.

"As to some of these provisions, it may be conceded that they are consistent with the idea that a debt was being created, but does it follow that they are inconsistent with the opposite view? While each part of the contract should be considered by itself, yet the several parts should be construed together, and the intent gathered from a consideration of the whole."

In Ellsworth v. Lyons, 181 Fed. 58, 104 C. C. A. 4, in deciding that certain holders of preferred stock were stockholders and not creditors, Knappen, Circuit Judge, used the following language:

"The law is well settled that a corporation may lawfully give security to one class of stockholders over another class. Warren v. King, 108 U. S. 389 [2 Sup. Ct. 789, 27 L. Ed. 769]; Hamlin v. Toledo, St. L. & K. C. R. Co. (6th Circuit) 78 Fed. 664, 670, 24 C. C. A. 271, 36 L. R. A. 826; Continental Trust Co. v. Toledo, St. L. & K. C. R. Co. (C. C., N. D. Ohio), 86 Fed. 929, 949; Toledo,-St. L. & K. C. R. Co. v. Continental Trust Co. (6th Circuit) 95 Fed. 497, 531, 36 C. C. A. 155. It is equally well settled that a contract between a corporation and a stockholder by which the latter is to receive the par value or any part of his stock before all corporate debts are paid is contrary to public policy, and void. Warren v. King, 108 U. S. 389, 396, 2 Sup. Ct. 789, 27 L. Ed. 769; Hamlin v. Toledo, St. L. & K. C. R. Co. (6th Circuit) 78 Fed. 664, 670–672, 24 C. C. A. 271, 36 L. R. A. 826; Guaranty Trust Co. v. Galveston City R. R. Co. (5th Circuit) 107 Fed. 311, 46 C. C. A. 305; American Steel & Wire Co. v. Eddy, 130 Mich. 266, 269, 89 N. W. 952; s. c., 138 Mich. 403, 407–410, 101 N. W. 578; Clark v. E. C. Clark Machine Co., 151 Mich. 416, 424, 115 N. W. 416; Cook on Stock and Stockholders (3d Ed.) § 271." '

The following cases are cited as being opposed to the views expressed in this opinion:

Heller v. Bank, 89 Md. 602, 43 Atl. 800, 45 L. R. A. 438, 73 Am. St. Rep. 212. This case when properly understood supports our views. It was there in substance decided that, as between creditors and ordinary preferred stockholders, the latter, as owners of the property of an insolvent corporation, are, upon a distribution of its assets, entitled to nothing until its creditors are first fully paid; but, if the statute under which what is called preferred stock is issued by a corporation provides that such preferred stock shall constitute a lien on the company's property and be entitled to priority of payment over general creditors, then such stock is not preferred stock in the ordinary sense, although so called in the statute, and although it possesses many of the incidents of ordinary preferred stock. The statute which authorized the issuance of the preferred stock in the case cited provided that "said preferred stock shall be and constitute a lien on the franchises and property of such corporation, and shall have priority over any subsequently created mortgage or other incumbrance." The court simply held that the holders of the preferred stock were entitled to the lien and priority expressly given to it by the statute.

Mulford v. Exploration Co., 45 Colo. 81, 100 Pac. 596. This case has no bearing upon the case at bar. The plaintiff in that case purchased treasury stock of the Exploration Company with the right to return the stock and have the consideration which he gave therefor returned to him within six months. It was held that such a sale of stock was not in violation of the Colorado statute prohibiting corporations from using any of their funds for the purchase of stock in their own company or corporation, except such as might be forfeited for the nonpayment of assessments thereon.

Savannah Real Estate, Loan & Building Co. v. Silverberg, 108 Ga. 281, 33 S. E. 908. This case comes nearest to being opposed to our views, but it involved stock in a building and loan association, and was governed largely by the statute authorizing the issuance of the stock.

Cook v. Equitable Building & Loan Association, 104 Ga. 814, 30 S. E. 911. This was another building and loan association case, and its decision depended largely upon the law peculiar to building and loan associations.

We are therefore of the opinion, as hereinbefore indicated, that the holders of the preferred stock are preferred stockholders of the corporation, and not creditors; that the provision of the stock certificate which provides in case of the dissolution of the assets of the corporation that $11 per share shall be first paid to the holders of preferred stock is valid as against the holders of common stock, and that this was all the parties to the certificate intended; that if, by any construction of the provision, it could be held to have intended a preference as against the creditors of the corporation, it is void as being against public policy. What has been said also compels the holding that the agreement contained in the stock certificate that the corporation will redeem all its preferred stock on or before January 1, 1916, if con-

strued as allowing the corporation to pay the preferred stockholders $11 per share for the preferred stock, plus accumulated unpaid dividends, before paying the debts of the corporation, is void as being against public policy.

The decree of the district court, therefore, must be reversed, and the case remanded, with instructions to enter a decree avoiding the lien of the trust deed as against bona fide creditors of the corporation. And it is so ordered.