### WILLIAMS v. BROWNSTEIN.

(District Court, D. Maine. September 20, 1924.)

No. 866.

**1. Corporations ⟨⟩544(2) — Capital is trust fund for creditors.**

Under law of Maine, capital of corporation is trust fund for creditors, who have lien on it in equity, and, if diverted, may follow it as far as it can be traced, and subject it to payment of their claims, except as against bona fide holders, who have taken it for valuable considerations.

**2. Corporations ⟨⟩376—Purchase by corporation of its own stock is in fraud of subsequent creditors.**

Under general corporation law, purchase by corporation of its own stock is in fraud of subsequent creditors.

**3. Bankruptcy ⟨⟩178(2) — Money of corporation, paid for its own stock held recoverable by its trustee as transferred in fraud of creditors.**

Where stock of corporation was purchased from an officer nominally by its president, but paid for with money of corporation charged to president's account, which charge was later canceled under resolution of stockholders, and the stock thereafter carried as treasury stock, *held*, that stock was in fact purchased by corporation, and money paid therefor was recoverable from seller, under Bankruptcy Act, § 70e (Comp. St. § 9654), by trustee in bankruptcy of corporation.

In Equity. Suit by Dana S. Williams, trustee in bankruptcy of the Chadwick Heel

Company, against Michael Brownstein. Decree for complainant.

Thompson, Hoague & Hill, of Portland, Me. (John W. Hill, of Portland, Me., of counsel), for plaintiff.

Maurice E. Rosen, of Portland, Me., and Benjamin Berman, of Lewiston, Me., for defendant.

HALE, District Judge. This bill in equity is brought by the trustee in bankruptcy of the Chadwick Heel Company against Michael Brownstein, formerly director and treasurer of the bankrupt company, under section 70e of the Bankruptcy Act (Comp. St. § 9654), for the purpose of avoiding a transfer by the bankrupt of certain property of the bankrupt, to wit, certain moneys of the bankrupt, constituting a part of the capital of the corporation, and of recovering such moneys.

Section 70e of the Bankruptcy Act provides: "The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

The proofs show: That the bankrupt company was incorporated under the laws of Maine, in 1919, for the purpose of dealing in leather and leatheroid heels, and commenced business in August of that year. At the outset the company purchased the machinery and stock in trade of the Brockton Heel Company, paying about $8,000 for same. The cash capital contributed amounted to $15,000, leaving $7,000 for working capital after the purchase of the Brockton Heel Company property; and 222 shares of the stock, par value $100, were issued; the original stockholders, Daniel J. Lyne, Stanley A. Chadwick, and Michael Brownstein, each receiving 74 shares of the stock. Chadwick became president and general manager, and Brownstein a director and treasurer, of the company. Brownstein continued in such position until March 6, 1923, when he resigned. Brownstein was then the owner of 74 shares, issued to him in 1919, for which he paid $5,000. The bylaws of the company provide that no stockholder should sell his stock without first offering it to the company. At a meeting on October 13, 1921, at which meeting Brownstein was present, he offered his stock to the company for the sum of $8,000, and this offer was accepted. A few months after that, on February 28, 1922, there was an agreement between Chadwick, the president of the corporation, and Brownstein, the treasurer, which upon its face provided for the purchase and sale of Brownstein's 74 shares of stock for $8,000. At the time of the agreement $500 was paid on account, and other payments were made at various times thereafter up to March 6, 1923. During all this time Chadwick was heavily indebted to the company.

The stock was delivered by Brownstein to Chadwick March 6, 1923. At a meeting of the stockholders of the corporation, held on that date, the following vote was passed:

"Voted, that the corporation ratify the acts of Stanley A. Chadwick, as president, in purchasing outstanding stock of the company at the most favorable figure to the corporation, for the purpose of reducing the stock from individual holdings to treasury stock. It appearing before this ratification that the purchase of said stock having been done without a corporation meeting, and the money paid for said stock had been charged to the president's personal account, it is the purpose of this ratification to cancel the charge against Stanley A. Chadwick's personal account, in consideration of his indorsing the stock certificate thus bought in his own name to the corporation."

From this date the stock appears to have been carried upon the books of the bankrupt corporation as treasury stock, and the purchase by the corporation to be fully recognized.

Upon the proofs it is contended by the plaintiff that Brownstein in fact sold his stock to the corporation, and received the corporation's money for the stock; that the first payment of $500 was made direct from the corporation, and the succeeding payments by drawing money from the bankrupt corporation, placing it to Chadwick's personal account, and giving his personal check to Brownstein.

Learned counsel have prepared, from the testimony, a table showing the dates, amounts, and methods of all the payments, the amount of withdrawal from the bank-

rupt at the time of the several payments, and the amount of the indebtedness of Chadwick to the company at the time of each payment. Upon examination of the proofs, this memorandum appears to be a correct statement. The memorandum shows: creditors; that the stockholders have no rights to it until all other creditors are satisfied; that such stockholders have the full benefit of the profits, but cannot take any portion of the capital, until all other claims are extinguished. They have no right to

| Date. | Amount of Withdrawal. | Method of Payment. | Amount of Chadwick's Indebtedness to Company. | Chadwick's Payments to Brownstein. | |
|---|---|---|---|---|---|
| | | | | Date. | Amount. |
| Feb. 17, 1922 | $ 500.00 | Bankrupt's check for $500.00 | $12,314.50 | This first payment was direct from bankrupt. | |
| March 17, 1922 | 1,000.00 | Lunn & Sweet check. | 13,314.50 | Mch. 17/22 | $1,000. |
| April 7, 1922 | 2,031.43 | Dingley & Foss check. | 19,663.92 | Apr. 17/22 | 1,000. |
| May 13, 1922 | 1,100.00 | Bankrupt's check. | 20,243.29 | May 17/22 | 1,000. |
| June 15, 1922 | 2,129.99 | Lunn & Sweet check. | 23,823.34 | June 17/22 | 1,000. |
| Aug. 23, 1922 | 1,442.33 | Lunn & Sweet check. | 20,030.50 | Aug. 23/22 | 1,000. |
| March 6, 1923 | 4,500.00 | Proceeds of Mann loan. | 17,395.74 | Mar. 6/23 | 2,500. |

The defendant denies that any moneys or any property of the Chadwick Heel Company was transferred to him in payment for this stock. He denies that any payment constituted a fraudulent transfer and misapplication of the funds of the Chadwick Heel Company. He says that the $8,000 paid to him by Chadwick was not corporation funds, but was the individual money of Chadwick; that he made his contract with Chadwick to sell him personally the 74 shares of stock; that he made the agreement in good faith, and that Chadwick paid the consideration money out of his own individual funds; that the plaintiff has not proved any transfer by the bankrupt of its property, which transfer a creditor of the bankrupt might have avoided. With reference to the last payment on March 6, 1923, the defendant says that this payment of $2,500 was made by a check of Shirley Mann, payable to Chadwick personally, and from funds which had never come into the hands of the corporation, and therefore could not be subject to transfer under section 70e.

Under the statutes of Maine, the capital stock of a corporation "stands for the security of all creditors." R. S. Me. c. 51, § 96. The withdrawal of such capital is void as against any judgment creditor. No dividend by a corporation from its capital stock, and no withdrawal of any portion of such capital, directly or indirectly, no transfer thereof in any form to the corporation which issued it, is valid against any person who has a lawful judgment against the corporation. R. S. Me. c. 51, § 97.

[1] The courts of Maine hold that capital of a corporation is a trust fund for the capital, but "to the residuum after all demands on it are paid." In re Brockaway Mfg. Company, 89 Me. 121, 126, 35 Atl. 1012, 1013 (56 Am. St. Rep. 401). The decision in that case rests upon the law, announced by the Supreme Court of the United States, that the capital of an incorporated company is a fund set apart for the payment of its debts; that "when debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it bona fide for a valuable consideration." Sanger v. Upton, 91 U. S. 56, 60, 23 L. Ed. 220. See, also, Spencer v. Smith, 201 Fed. 647, 120 C. C. A. 75.

[2] Under the General Corporation Law, the purchase by a corporation of its own stock is in fraud of subsequent creditors. Coleman v. Tepel, 230 Fed. 63, 144 C. C. A. 361; Spencer et al. v. Smith et al., 201 Fed. 647, 120 C. C. A. 75; Coleman v. Booth, 268 Mo. 64, 186 S. W. 1021. And even the fact that a stockholder, in selling his shares of stock, did not know that the corporation is a purchaser, does not render the transaction valid as against creditors. Crandall v. Lincoln, 52 Conn. 73, 52 Am. Rep. 560.

The liability of a director or officer of a corporation rests on the broad grounds that such officer is a trustee for the stockholders and a trustee for creditors, for the purpose of maintaining the capital unimpaired. Clay v. Towle, 78 Me. 86, 89, 2 Atl. 852;

European & No. American Railway Co. v. Poor, 59 Me. 277. In Trevor v. Whitworth, 12 Supp. Cases, 409, Lord Watson stated the fundamental reason for the law: He said that such creditors " * * * are entitled to assume that no part of the capital which has been paid in to the coffers of the company has been subsequently paid out, except in the legitimate course of its business."

In Hamor v. Taylor-Rice Engineering Company, 84 Fed. 392, 396, 397, the United States Circuit Court defined the capital of a corporation to be "the fund of money or other property, actually or potentially in its possession, derived or to be derived from the sale by it of shares of its stock or their exchange by it for property other than money. This fund includes not only money or other property received by the corporation for shares of stock but all balances of purchase money, or installments, due the corporation for shares of stock sold by it, and all unpaid subscriptions for shares. Upton v. Tribilcock, 91 U. S. 45; Sanger v. Upton, supra; Sawyer v. Hoag, 17 Wall. 610; Burke v. Smith, 16 Wall. 390, 395. * * * But, whether a corporation be solvent or insolvent, the fund represented by its capital stock must remain inviolate for the protection of its creditors."

In quoting Farrington v. Tennessee, 95 U. S. 679, 686, 24 L. Ed. 558, the court said:

"The capital stock is the money paid or authorized or required to be paid in as the basis of the business of the bank, and the means of conducting its operations. It represents whatever it may be invested in. If a large surplus be accumulated and laid by, that does not become a part of it. The amount authorized cannot be increased without proper legal authority. If there be losses which impair it, there can be no formal reduction without the like sanction. No power to increase or diminish it belongs inherently to the corporation. It is a trust fund, held by the corporation as a trustee."

[3] In passing upon the case at bar the court must proceed upon the "principles and considerations that are equitable, in their character." Brockaway Case, 89 Me. 121, 127, 35 Atl. 1012, 1013 (56 Am. St. Rep. 401). The proofs, including the books of the company and the oral testimony of witnesses brought before me, force me to conclude that a transfer of certain moneys of the corporation was made by the bankrupt company to Brownstein. The original intention of the corporation to purchase

Brownstein's stock, in October, 1921, is shown by the record of the corporation meeting of that date. This vote was not immediately carried out, and some four months after a similar agreement was made between Brownstein and Chadwick purporting to provide for the purchase of Brownstein's stock by Chadwick personally; but when the stock had been transferred to Chadwick it was immediately turned in to the company, and by vote of the company, and by subsequent acts of the company, it was treated as treasury stock. The whole testimony upon the subject induces the belief that the pretended sale to Chadwick personally was a sham; that the intent of the parties was that the sale should be a sale of Brownstein's stock to the company, and that the transfer of the moneys was, in fact and in equity, a transfer to Brownstein. I am satisfied, too, that the first payment of $500, and the subsequent five payments of $1,000 each, were made from the funds of the company, which indirectly were transferred through Chadwick to Brownstein, and that such payments are within the meaning of section 70e of the Bankruptcy Act.

The last payment of $2,500 to Brownstein was made by a check on Shirley Mann. It appears that this check was not paid to Brownstein through the corporation. The check of Shirley Mann was indorsed over direct from Chadwick to Brownstein, without going through the corporation bank. The learned counsel for the plaintiff insists that in equity the defendant should not be permitted to keep $2,500, to which he had no right, for which he gave no valuable consideration, and which was received as part of an illegal transaction. It is urged that this sum of $2,500 was entered upon the corporation account books as corporate funds. But I am left in some doubt as to whether this sum of $2,500 should, under the proofs, be held to be corporate funds. I give the defendant the benefit of that doubt. I therefore find that the transfer from the corporation consisted in the first six payments made to Brownstein; namely, of the sum of the first payment of $500, and subsequent five payments of $1,000 each, making in all $5,500. I find, further, as a fact, that these payments were made from the capital of the corporation and were made in fraud of creditors. Of course, it is not necessary to prove affirmatively that some creditor had actually obtained judgment and issued execution thereon, so that he could maintain an action. It is

enough to show that there was a transfer in fraud of creditors. Thomas v. Roddy, 122 App. Div. 851, 107 N. Y. Supp. 473, 19 Am. Bankr. Rep. 873; Johnson v. Canfield Swigart Co., 292 Ill. 101, 126 N. E. 608, 45 Am. Bankr. Rep. 234; Collier on Bankruptcy (Edition of 1923) pp. 1771–1777, and cases cited. Such transfer having been made, I have no question that a creditor whose rights were affected might avoid the transfer and might recover the property so transferred, and that the capital was impaired by the making of the transfer for the illegal purpose of purchasing the stock of the corporation from one of its stockholders and officers. Cole v. Tepel, supra, and cases cited.

The bringing of this action by the trustee, in the form in which it is brought, is sustained by Park, Trustee of Slayden-Kirksey Woolen Mill, Bankrupt, v. Cameron, 237 U. S. 616–618, 35 Sup. Ct. 719, 59 L. Ed. 1147. In that case the suit was not to avoid a transfer by the bankrupt of its property, but a suit against wrongdoers who had appropriated it without the bankrupt's consent. The case before me is not against a wrongdoer who had appropriated property without the bankrupt's consent, but against a defendant, an officer of the corporation, who had received funds transferred to him for an unlawful purpose. The suit was brought distinctly to avoid the transfer by the bankrupt of its property, and is clearly within section 70e of the Bankrupt Act.

Having found that the transfer of the moneys in question was made in fraud of creditors, I think interest should be allowed upon the first six installment payments, from the date when each payment was made to this date. Therefore judgment is to be rendered for $5,500, with interest, $773.50, making the full amount of the judgment $6,273.50.

The defendant has presented a motion to strike out certain evidence received de bene by the court, with rights reserved to the defendant during the trial to make this motion before judgment. I have examined the motion, and do not find that any of the evidence pointed out has been found material by me in arriving at my result. Inasmuch as the case may go forward to the Circuit Court of Appeals, and may come back to this court for further trial, I do not consider it expedient to strike out any testimony, but reserve the question relating to such evidence to the possible future action of this court.

A decree may be presented, declaring void the transfers of the moneys set forth in this opinion to the amount of $5,500, and declaring also that the plaintiff may recover the said moneys, to wit, the said $5,500, with interest as stated in this opinion, to wit, the full sum of $6,273.50 with costs.