JACOB B. MASSOTH ET AL. vs. THE CENTRAL BUS CORPORATION.

Third Judicial District, New Haven, June Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

Such is the position of trust and confidence which a director occupies toward his corporation, that if he deals with it as an individual, even though not participating in the transaction on behalf of the corporation, the burden rests upon him to demonstrate that the business was entirely fair, done in good faith, for an adequate consideration, and upon a full understanding; and if he makes with his corporation an agreement the execution of which could not be authorized by its board of directors

Massoth *v.* Central Bus Corporation.

except with his vote, alone or in conjunction with that of other directors having a like interest, the agreement is voidable at the election of interested parties, regardless of the good faith of the directors or the fairness of the transaction.

If, before its making, such an agreement is authorized by all the stockholders, or if, after its making, it is ratified by them with full knowledge of the facts, it becomes as to them a valid transaction and no court will, at their behest, question its good faith or fairness.

A stockholder who not only authorizes or ratifies an agreement, otherwise voidable, between a corporation and its directors, but who also participates in the benefits resulting therefrom, is estopped to deny its validity; but if the contract is indefinite in its duration, as in the present case, where it involved the payment of weekly compensation to the directors, he may at any time withdraw his consent as to its future operation, and the estoppel thereupon ceases.

Even in the absence of statute, dividends on corporate stock can be declared and paid only out of profits and not out of capital or assets required for the security and payment of creditors.

A vote by the directors and stockholders of a corporation, authorizing weekly payments to themselves without regard to its outstanding debts or maturing obligations, is manifestly improper and *ipso facto* void, and a contract for the making of such payments cannot be validated by ratification or estoppel.

In the absence of a provision for deferred payments, a subscriber to corporate stock becomes immediately liable for the full amount of his subscription. On the other hand, he may at any time tender payment in full, whereupon he is forthwith entitled to receive a certificate for all his shares, which, until that time, the corporation may lawfully withhold from him.

Where subscribers to corporate stock, only partially paid for, have acted as managing officers of the corporation and have received full compensation for their services in that capacity, so that the corporation is in no way indebted to them, the issuance to them of full paid stock under a vote of the board of directors reciting that it is "for services rendered to said corporation as officers for a period covering several years," is invalid for want of consideration.

If, in an action for the appointment of a receiver of a corporation, it appears that the needs of the situation will be fully met by the collection of unpaid stock subscriptions, the specific relief sought may be properly denied, and judgment rendered ordering the corporation to take all action necessary to compel the subscribers to discharge their obligations.

Argued June 1st—decided July 30th, 1926.

ACTION for the appointment of a receiver of the defendant, and for other equitable relief, brought to the Superior Court in Fairfield County and tried to the court, *Ells, J.;* judgment rendered in part for the plaintiffs, but denying their prayer for the appointment of a receiver, from which they appealed. *Error in form of judgment, and cause remanded for entry of judgment in accordance with opinion.*

*David S. Day,* for the appellants (plaintiffs).

*Clifford B. Wilson,* for the appellee (defendant).

MALTBIE, J. The defendant is a corporation organized about December 1st, 1921, under the laws of Connecticut, with an authorized capital stock of $50,000, the par value of the shares being $25, and four hundred and thirty-two being outstanding. Its business is the transportation of persons by jitney bus over a certain route in Bridgeport. The original subscribers to the stock were eight men who had been individually engaged in the same business, and two attorneys, plaintiffs in this action, who advised and assisted them in the organization of the corporation, the bus operators each subscribing for forty-eight shares and the attorneys together for the same number. Of the operators, five at once paid in their subscriptions in full by each turning over to the corporation a bus owned by him at an appraised value of $1,200, and to each forty-eight shares of stock were issued; each of the other three turned over to the corporation a bus owned by him, and these were valued at $650, $700, and $900, respectively, and to each there was issued sufficient shares of stock to equal in par value the value of the bus transferred, that is, twenty-six, twenty-eight and thirty-six shares. The attorneys rendered their services in organizing the company under an agreement

to receive their pay in stock, and, after the corporation was organized, forty-eight shares were issued to them, the consideration stated in the vote being a certain service contract made by them with the corporation. In this contract the corporation agreed to employ them as attorneys, and they agreed to perform certain legal services for it for a period of two years; and they were to receive as compensation a sum equal to the excess over $40 a week paid as salary to any person as "a director and bus driver," the compensation in any event not to be less than $200 a year.

The subscribers to the stock of the corporation became its directors; and all except the attorneys actively engaged in the operation of the buses. It was necessary to employ other operators and these men were paid sums ranging at different times from $21.50 to $25 a week. The director-operators received at first $35 a week, and this was increased later to $40, and finally to $50 a week, which continued to be the salary paid to them down to the time of the trial. At the expiration of the two-year contract with the attorneys, it was not renewed, and shortly after they ceased to be directors of the corporation. They still own the forty-eight shares of stock originally issued to them and one of them has acquired an additional forty-eight shares from another of the original subscribers. The only other change in the holdings of stock in the corporation has resulted from the issuance to the three director-operators who did not pay for their stock in full at the organization of the corporation, of sufficient shares of stock to make up the forty-eight for which each subscribed. There have been no changes in the directorate of the corporation, except that the two attorneys have ceased to be directors, as has the other plaintiff in this action, Massoth. None of the plaintiffs

have received anything from the corporation since ceasing to be a director.

The plaintiffs seek in this action the appointment of a receiver and such other relief as to equity appertains. They allege various grounds for this relief, but, as the case comes to us, only two could avail them. These are stated in the complaint as follows: that the directors are disbursing to themselves money which really constitutes profits of the corporation; and that, to exclude the plaintiffs from any participation in the affairs of the corporation, the directors have caused fifty-four shares of stock to be issued to certain of their number, without the payment therefor required by law.

Taking up the first ground, the plaintiffs contend that the burden rested upon the director-operators to justify the payment of weekly salaries of $50 to each of them as reasonable compensation for services rendered to the corporation; and that this burden was not sustained. The services performed by the director-operators in the actual operation of buses, in preparing them for use and caring for them, and in the oversight and direction of the hired drivers, were entirely apart from any duties resting upon them as directors, were performed in the expectation of the receipt of compensation, and with knowledge on the part of the corporation and every one connected with it that such was the situation. The court has found that the payments made to them were reasonable compensation to them, and has made certain findings as to the nature and extent of those services. These findings the plaintiffs attack. Aside from the actual operation of the buses, wherein their work was of like nature to that of the hired drivers, no precise statement of the nature of the services they had performed would be possible. The court has found that they have, from the organiza-

tion of the business, frequently been on duty eighteen hours a day; that they have substituted at odd times for the hired drivers, have exercised general supervision over their conduct, have been ready to and have assisted in making repairs on the road or in the garage, and have checked up the moneys received; and that they have constantly worked for the success of the enterprise, and have in every way facilitated and made possible that success. These findings are supported by the testimony offered and the reasonable inferences which could be drawn from it, and cannot be disturbed. In addition, the trial court placed reliance upon the fact that the plaintiffs themselves acquiesced and shared in the payments, construing that conduct as evidencing an honest purpose on their part that reasonable compensation be made for services rendered rather than a desire that they might participate in a diversion of assets, a construction of the evidence which the court was entitled to make. To be sure it does find that the director-operators were "on duty practically all the working hours" and were "constantly" working for the success of the enterprise, but read in the light of the evidence brought before us to correct these findings, they obviously mean that these men were on duty at all times when there was need of their services. The conclusion of the trial court that the payments made represented reasonable compensation to the director-operators for services rendered, must stand.

The contention of the plaintiffs, however, involves the further claim that the directors could not by their own votes establish a contractual obligation on the part of the corporation to pay this compensation to them. They refer particularly to our decisions in *Mallory* v. *Mallory Wheeler Co.*, 61 Conn. 131, 138, 23 Atl. 708, and *Sisk* v. *Jordan Co.*, 94 Conn. 382, 389,

Massoth *v.* Central Bus Corporation.

109 Atl. 181, 519. In those cases we pointed out that every director of a corporation stands in a fiduciary relation to it, occupies toward it a position of the highest trust and confidence, and in all his relations with it is bound to use the utmost good faith and fair dealing; if he deals with it as an individual, not himself participating in the transaction on behalf of the corporation, the burden rests upon him to show the transaction was entirely fair, made in good faith, for an adequate consideration, and upon a full understanding; but if he makes with it an agreement the execution of which could not be authorized by its board of directors except with his vote, alone or in conjunction with that of other directors having a like interest, the agreement is voidable at the election of interested parties, without regard to the good faith of the directors or the fairness of the transaction. The case before us falls within the latter principle and not the former. That principle we did not base upon the ground that there was any legal incapacity on the part of directors to authorize a contract in behalf of the corporation with themselves as individuals, for that seems hardly a tenable position; *Minnesota L. & T. Co.* v. *Peteler Car Co.,* 132 Minn. 277, 156 N. W. 255; but we placed it upon the ground that the directors had no authority to make such a contract. From this it follows that a contract between a corporation and its directors, even though their votes were necessary to authorize its execution may be ratified by its stockholders after its execution, at least where all consent; *Russell* v. *Henry C. Patterson Co.,* 232 Pa. St. 113, 81 Atl. 136, 36 L. R. A. (N. S.) 199; *Lewis* v. *Matthews,* 161 App. Div. 107, 146 N. Y. Supp. 424; 4 Fletcher on Corporations, p. 3645; and that all its stockholders may in advance authorize the directors to make such a contract. *United States Steel Corporation* v. *Hodge,*

64 N. J. Eq. 807, 54 Atl. 1. If all its stockholders do authorize or ratify it with full knowledge, it becomes as to them a valid agreement, and there is no occasion for the court, at their behest, to question its good faith or fairness.

In the instant case, all the stockholders of the corporation were directors, and all not merely voted for the resolutions fixing the amounts to be paid as salaries, but personally profited from them, the director-operators by the sums they received as salaries, and the attorneys by the receipt under their contract, for a period of eighteen months, of the difference between $40 a week and the $50 received by the director-operators. Looking at the transaction from the standpoint of agreements between the corporation and the director-operators for the payment of compensation for services rendered, all the stockholders authorized and ratified them, and so long as that remained the situation the plaintiffs could not complain. From another standpoint, also, the plaintiffs could not be heard to object, for an estoppel against them would arise from their participation in the benefits resulting from the votes fixing the compensation. But those votes fixed the salaries to be paid for an indefinite time and the contractual obligation to pay them might therefore be terminated by the corporation at any time. Hence it follows that any of the stockholders, though originally consenting, might later withdraw that consent as regards the continuance of the payments; and that the estoppel arising from their participation would then cease. *George* v. *Central Railroad & Banking Co.,* 101 Ala. 607, 14 So. 752.

The trial court has in effect found that, until the beginning of this action, the plaintiffs took no steps to bring to the attention of the corporation the withdrawal of their consent to these payments or their ob-

jection to them. This finding the plaintiffs attack, citing a demand made by the attorneys when they ceased to be directors. But upon their own testimony, their demand at that time was not that the payments of salaries should cease, but that, as owners of stock in the corporation, they should continue to receive the sums they had been receiving under the agreement, although that agreement was at an end. The finding must therefore stand as made. The bringing of the action was, however, notice that the plaintiffs did withdraw their consent to the further payment of the salaries; the authority of the directors to continue them thereupon ceased; and the director-operators cannot be justified in retaining the sums since received as paid to them under a valid agreement. But upon the disavowal of the agreement on behalf of the corporation they would still be entitled to retain such sums as would represent reasonable compensation to them for the services they had in fact performed. *Thomas* v. *Brownville, F. K. & P. R. Co.*, 109 U. S. 522, 526, 3 Sup. Ct. 315; *Wyman* v. *Bowman,* 127 Fed. 257, 272; *Parker* v. *Nickerson,* 137 Mass. 487, 497; *Duncomb* v. *New York, H. & N. R. Co.*, 84 N. Y. 190, 199. The finding of the trial court that the payments made to them did represent reasonable compensation, concludes any claim of the plaintiffs that the corporation should be reimbursed upon the ground we are now considering.

The plaintiffs, however, in a further attack upon the transaction, assert that the amounts paid the director-operators do not represent compensation at all, but are in effect distributions among the directors of earnings of the corporation. "The general rule, even in the absence of any statute on the subject, is that dividends, in a going concern, can be properly declared and paid only out of profits, and not out of capital, or assets required for the security and payment of creditors."

*Davenport* v. *Lines,* 72 Conn. 118, 128, 44 Atl. 17. Weekly payments voted to stockholders out of the earnings of a corporation, without regard to its outstanding debts or maturing obligations, are manifestly improper, and any vote providing for them is *ipso facto* void.   6 Fletcher on Corporations, p. 6086. Neither ratification by all the stockholders, nor estoppel, could avail to give validity to an agreement to make them.   1 Clark & Skyles on Agency, p. 282; 10 R. C. L. 801.   If the claim of the plaintiffs were sound, the votes authorizing the payments to the director-operators were improper and invalid when they were adopted, and the plaintiffs would have to bear a full share of the responsibility for that illegal action, for they joined in the votes and participated in the results.   There is much upon the record to justify their claim; the situation strongly suggests that the underlying purpose was to use the method adopted as a means of distributing corporate earnings among the stockholders; at least, whether intended or not, that was the result, as the finding makes clear.   Courts must scrutinize such transactions with the utmost care and be quick to protect the interests of creditors and stockholders not participating in the transaction.   If ever it was necessary that all the director-operators should act, and be paid, as managing officers, that need would seem to have passed; and if hereafter their compensation is called in question, they should be in a position to offer authentic accounts of the nature and extent of the particular services each has rendered. The votes fixing certain sums to be paid to them no longer are effective, and each is entitled to receive only such amounts as reasonably compensate him for such services as he can show he has in fact performed.   The finding of the trial court that the compensation the director-operators have received is reasonable, disposes

of the plaintiffs' present claim, but is not a justification for a continuance of similar payments in the future.

Turning to the second ground; the trial court has expressly found that the shares of stock in question, which were those later issued to the subscribers who did not pay their subscriptions in full at the organization of the corporation, were not issued with intent to preclude the plaintiffs from participation in the business of the corporation, and this finding the record does not show to be so unreasonable that we could strike it out. The court does find that these shares were issued in recognition of the services and efforts of these subscribers in behalf of the corporation. They were issued in pursuance of a resolution offered at a meeting of the directors held on January 29th, 1925, which, although the record does not so state, the court finds to have been adopted, and which, pursuant to the plaintiffs' motion to correct the finding, we read into it. The resolution states that, whereas the corporation "is indebted" to each of the three directors in sums equal to the amount unpaid upon his subscription, "for services rendered to said corporation as officers for a period covering several years, now, therefore, be it resolved . . . that said sums be paid as aforesaid, and it has hereby authorized the issuance of certificates" of stock to an amount in the case of each sufficient to give to him the forty-eight shares for which he had subscribed, "in full for such services and discharge of such indebtedness." We also, at plaintiffs' request, add to the finding the fact, to which defendant's own witnesses testified, that these directors had at various times requested that the debts owed by them upon their subscriptions be released and the stock be issued to them. It is not found that there was in fact any indebtedness of the corporation to these men for services rendered, and in its memorandum of decision

made part of the finding, the trial court in effect states that they were fully paid for all services rendered by the salaries received by them.

It is obvious that the shares of stock issued to these men were the balance of the shares for which they had originally subscribed, and that they were issued in recognition of past services which did not give rise to a debt of the corporation to them, that is, without consideration paid to the corporation for them. Upon the organization of the corporation, each of these men became bound to pay into the corporation the amount of the par value of the shares for which he had subscribed; this obligation, in the absence of provisions for deferred payments, became at once due to the corporation, and, so far as it was unpaid, might be enforced against him by the corporation at any time; on the other hand, he might at any time have paid the balance due and thereupon become entitled to receive a certificate for the full number of shares for which he subscribed; but, until he did pay his subscription in full, the corporation might withhold the certificate. General Statutes, §§ 3431, 3434, 3435; *Hartford & N. H. R. Co.* v. *Kennedy,* 12 Conn. 499; *Mann* v. *Cooke,* 20 Conn. 178, 187; *Danbury & Norwalk R. Co.* v. *Wilson,* 22 Conn. 435, 453; *United German Silver Co.* v. *Bronson,* 92 Conn. 266, 269, 102 Atl. 647; *Butts* v. *King,* 101 Conn. 291, 298, 301, 125 Atl. 654; 2 Fletcher on Corporations, pp. 1258, 1509. At the time when these shares were issued to these men, they had a perfect right to them upon payment of the balance due upon their subscriptions. It appears from the trial judge's memorandum of decision that they stated in open court their willingness to pay to the corporation the amount due in cash, if the court thought that they should, and, as the court so concluded, the judgment runs that the balance of their subscription should be

paid into the treasury within one month. As these men were not parties to the action, that statement amounts merely to a conclusion reached by the trial court, which could be effective only as it relates to action by the corporation, the sole defendant. On the other hand, as they have a right to receive the stock upon payment of the amount due, and have professed a willingness to pay that amount in cash, upon the contingency of the court's finding as it did, provision in the judgment merely for the return of the stock and cancellation of the certificate would hardly meet the full situation. The judgment should have enjoined upon the corporation that it should demand of them that they pay the balance due upon their subscriptions or surrender the stock, and that, if they failed to do one or the other, it should take appropriate legal action to secure such a result. Such action will fully meet the needs of the case, and the appointment of a receiver would be an entirely unnecessary proceeding.

So far as material, the claims of the plaintiffs for corrections of the finding have been discussed in the course of the opinion.

There is error in the form of the judgment rendered, and the cause is remanded to the Superior Court with direction to enter judgment in accordance with this opinion.

In this opinion the other judges concurred.