[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PREJUDGMENT REMEDY
This case came to this court as a contested prejudgment remedy.
The plaintiffs are Valerie J. Shorrock, John E. McConnaughy, and Barn Again, Inc. The defendants are Philip Law, Valerie Law a/k/a Valerie Flowers, The Forgotten Garden, Inc., and Barn Yesterday Limited Partnership.
At the hearing before this court Valerie Shorrock testified, the business relationship between the parties began in the fall of 1995, when Philip Law approached Valerie Shorrock about a possible business venture to be known as Barn Again. When John McConnaughy became involved, the scope of the business relationship expanded to include other companies owned by Philip Law and Valerie Law: Forgotten Garden, Barn Yesterday and Costa Restauracion. John McConnaughy agreed to lend $400,000 on behalf of himself and Valerie Shorrock to the defendants. In return for this loan and a subsequent capital investment, John McConnaughy and Valerie Shorrock were to receive a 50% ownership interest in Forgotten Garden, Barn Yesterday and Costa Restauracion, another company owned by Philip Law.
Valerie Shorrock testified that John McConnaughy lent the $400,000 to the defendants in two checks dated November 13, 1995, one in the amount of $160,000 payable to Forgotten Garden and the CT Page 9063 other in the amount of $240,000 payable to Barn Yesterday. (Exhibits 2 and 3).
Philip Law executed a promissory note evidencing the $400,000 Loan on December 5, 1996 (the "$400,000 Note"). Valerie Law also signed the $400,000 Note. After Valerie Law signed the $400,000 Note, Philip Law delivered the $400,000 Note to John McConnaughy. The $400,000 Note was admitted into evidence as Exhibit 4.
John McConnaughy demanded payment in full of the $400,000 Loan on February 8, 1996. Philip Law admitted that the interest payment due on February 17, 1996 was not made. The $400,000 Loan was not repaid.
John McConnaughy also lent $16,000 to Forgotten Garden in December 1995 (the $16,000 Note). Valerie Law executed a promissory note evidencing the $16,000 Loan, which was admitted into evidence as Exhibit 5. Payment in full was demanded on February 8, 1996. Valerie Law testified that part of the loan was paid by check to John McConnaughy and the balance was set off against obligations allegedly owed to Forgotten Garden by Barn Again.
The notes are in default and are attached to this decision. The notes provide for security and waive a hearing under our Prejudgment Remedy Statutes.
Valerie Shorrock also testified that Philip Law and Valerie Law had failed to perform their obligations under the business arrangement between the parties. Mohammed Elnahaus confirmed that the Laws had not honored their responsibilities to Barn Again.
Many of the material facts established by plaintiffs were not disputed by defendants. Plaintiffs have demonstrated probable cause that they are likely to succeed at the trial on the merits of their claims for defendants' breach of contract, failure to pay the $400,000 Note, and failure to pay the $16,000 Note in full.
The court denies the extraordinary remedy of a receiver in this matter at this time.
In accordance with Connecticut General Statutes § 52-504, the Supreme Court has held that an application for a receiver is within the sound legal discretion of the court. Chatfield Co. v.CT Page 9064Coffey Laundries, Inc., 111 Conn. 497, 501 (1930). However, the Supreme Court has further recognized that the appointment of a receiver is a drastic remedy. Masoth v. Central Bus Corp.,104 Conn. 683, 695 (1926).
In determining whether a receiver is necessary the court must weigh the availability and adequacy of another remedy. ChatfieldCo. v. Coffey Laundries, Inc., supra. If after such examination "it appears that some expedient action or remedy, less stringent in effect than a receivership, will meet the situation, that course should be taken." Massoth v. Central Bus Corp., supra. Here, after such examination a modification of the existing prejudgment remedy is less drastic and better suited for the circumstances.
Plaintiffs have established probable cause that they would recover judgment from defendants in the amount of at least $416,000. The net equity in the real property subject to the exparte prejudgment attachment was less than $17,000. Plaintiffs are entitled to a modification of the prejudgment attachment to include other property having an additional value of $400,000
The court orders an attachment as follows:
To attach the following described property of defendants Philip Law, Valerie Law a/k/a Valerie Flowers ("Valerie Law"), Forgotten Garden and Barn Yesterday, in addition to the real property belonging to defendant Valerie Law already attached pursuant to this court's March 28, 1996 Order, to the value of $400,000.
(a) Property belonging to Philip Law:
(1) The general partnership interest in defendant Barn Yesterday Limited Partnership, a Connecticut limited partnership created June 22, 1995.
(2) All partnership distributions and income to which Philip Law is entitled as the general partner of Barn Yesterday.
(3) All funds in the bank account of Philip Law, Account No. 401-313-1, located at Westport Bank Trust Company.
(4) All funds in any other bank account belonging to Philip Law. CT Page 9065
(b) Property belonging to Valerie Law:
(1) All shares owned by Valerie Law in defendant Forgotten Garden.
(2) All dividends and income to which Valerie Law is entitled as a shareholder of Forgotten Garden.
(3) All funds in any bank account belonging to Valerie Law.
(c) Property belonging to Forgotten Garden:
(1) All funds in the following bank accounts in the name of Forgotten Garden located at Westport Bank Trust Company:
 Account No. 4026748; Account No. 4039629; Account No. 4040341; Account No. 4054334; Savings Account No. 5000726364; and two other savings accounts
(2) All accounts receivable.
(3) All inventory belonging to Forgotten Garden and located in its store at 643 Danbury Road, Wilton, Connecticut.
(4) All inventory belonging to Forgotten Garden and located in its warehouse at 644 Danbury Road, Wilton, Connecticut.
(5) All inventory belonging to Forgotten Garden and located in its storage space at 80 Lone Town Road, Redding, Connecticut.
(6) All inventory belonging to Forgotten Garden and located in the residence of Philip Law and Valerie Law at 80 Lone Town Road, Redding, Connecticut.
(d) Property belonging to Barn Yesterday:
(1) All funds in the checking account of Barn Yesterday located at Westport Bank Trust Company. CT Page 9066
(2) All accounts receivable.
(3) All inventory belonging to Barn Yesterday and located in its premises at 322 Ethan Allen Highway, Ridgefield, Connecticut.
(4) All property contributed by Philip Law to Barn Yesterday pursuant to an Agreement of Limited Partnership made June 22, 1995 between Philip Law and James McFarland.
KARAZIN, J.
COMMERCIAL DEMAND PROMISSORY NOTE
$400,000.00 New Canaan, Connecticut December 5, 1995
FOR VALUE RECEIVED, the undersigned (the "Makers"), hereby unconditionally promise to pay, jointly and severally, to the order of John E. McConnaughy ("Payee"), ON DEMAND, at the office of the Payee located at 1011 High Ridge Road, Stamford, Connecticut 06905, or such other office as the holder hereof may designate, in lawful money of the United States, the principal sum of Four Hundred Thousand Dollars ($400,000.00), together with interest thereon, as provided for in, and subject to the terms of, this Note.
1. Demand Note. All principal and accrued interest under this Note is payable in full to Payee upon Payee's demand at any time after the earlier of (i) May 17, 1996 and (ii) the date on which Makers manifest their intention not to consummate a transaction in which Payee will directly or indirectly acquire a 50% ownership interest in the businesses of Makers.
2. Interest Rate; Payment of Interest. Makers shall pay interest, in arrears, on the unpaid principal balance hereof outstanding from time to time at a rate equal to eight percent (8%) per annum. Interest shall commence to accrue on the date hereof and shall continue to accrue until the principal hereof is paid in full, whether before or after maturity or judgment (the "Final Payment Date"). Interest shall be payable on the 17th day of each February, May, August and November, and on each date on which a payment of principal is made hereunder, through and including the Final Payment Date. Anything contained in this Note CT Page 9067 to the contrary notwithstanding, the Payee does not intend to charge and the Makers shall not be required to pay interest or other charges in excess of the maximum rate permitted by applicable law. Any payments in excess of such maximum shall be refunded to Makers or credited against principal.
3. Prepayment; Application of Payments. Makers may prepay the principal hereof, in whole or in part, at any time without penalty or premium. All prepayments under this Note shall, unless the Payee otherwise agrees, be applied first to pay any costs and/or expenses payable by Makers pursuant to this Note, then to accrued and unpaid interest and then to principal.
4. Security. To secure the obligations of Makers under this Note, Makers, for themselves and for any and all entities which they control or for which they may act ("Controlled Entities"), hereby grant to Payee a first lien and security interest in all inventory and other business assets of Makers and the Controlled Entities (the "Collateral"). For purposes of this Note, the term "Collateral" shall also mean and include any and all additions to and proceeds of such inventory and other business assets. Makers acknowledge that the proceeds of the loans evidenced by this Note have been used in part to provide financing for their various business interests, including the businesses of the Controlled Entities, and that such business interests have substantially benefitted [benefited] from the making of such loans by Payee. Makers, for themselves and their Controlled Entities, agree that they shall not permit any lien or encumbrance to be placed on the Collateral other than the security interest granted to Payee pursuant hereto and that they shall operate their businesses in the ordinary course and according to customary business practices. Makers, for themselves and their Controlled Entities, agree to take such further action and execute such further documents as Payee may request to more fully implement the provisions and intent of this Note, including, without limitation, the execution and delivery of Uniform Commercial Code financing statements and naming Payee as a loss payee on policies of insurance on the Collateral. For purposes hereof, the term "Makers" shall include the Controlled Entities.
5. Certain Waivers. Makers and any endorser or guarantor hereof (collectively, the "Obligors") and each of them (i) waive(s) presentment, diligence, protest, demand, notice of demand, notice of acceptance or reliance, notice of non-payment, notice of dishonor, notice of protest and all other notices to parties in CT Page 9068 connection with the delivery, acceptance, performance, default or enforcement of this Note, any endorsement or guaranty of this Note, or any collateral or other security; (ii) consent(s) to any and all delays, extensions, renewals or other modifications with respect to this Note, any related document or the debt(s) or collateral evidenced hereby or thereby or any waivers of any term hereof or thereof, any release, surrender, taking of additional, substitution, exchange, failure to perfect, record, preserve, realize upon, or lawfully dispose of, or any other impairment of, any collateral or other security, or any other failure to act by the Payee or any other forbearance or indulgence shown by the Payee, from time to time and in one or more instances (without notice to or assent from any of the Obligor(s) and agree(s) that none of the foregoing shall release, discharge or otherwise impair any of their liabilities; (iii) agree(s) that the full or partial release or discharge of any Obligor(s) shall not release, discharge or otherwise impair the liabilities of any other Obligor(s); and (iv) otherwise waive(s) any other defenses based on suretyship or impairment of collateral.
6. Commercial Transaction; Jury Waiver. THE MAKERS ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS NOTE IS A PART IS A "COMMERCIAL TRANSACTION" WITHIN THE MEANING OF CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, AS AMENDED, AND THAT ANY MONIES, PROPERTY OR SERVICES WHICH ARE THE SUBJECT OF SUCH TRANSACTION ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. THE MAKERS HEREBY WAIVE ANY RIGHT WHICH MAKERS MIGHT HAVE TO A NOTICE AND A HEARING, UNDER SECTIONS 52-278a-52-278g INCLUSIVE, OF THE CONNECTICUT GENERAL STATUTES, OR OTHER APPLICABLE FEDERAL OR STATE LAW, IN THE EVENT THE PAYEE (OR ITS SUCCESSORS OR ASSIGNS) SEEKS ANY PREJUDGMENT REMEDY IN CONNECTION WITH THIS NOTE, AND/OR RELATED DOCUMENT.
(b) THE MAKERS HEREBY KNOWINGLY AND VOLUNTARILY WAIVE TRIAL BY JURY AND THE RIGHT THERETO IN ANY ACTION OR PROCEEDING OF ANY KIND, ARISING UNDER OR OUT OF, OR OTHERWISE RELATED TO OR OTHERWISE CONNECTED WITH, THIS NOTE AND/OR ANY RELATED DOCUMENT.
7. Miscellaneous. No delay or omission by the Payee in exercising any right or remedy hereunder or under any guaranty hereof shall operate as a waiver of such right or remedy or any other right or remedy; and a waiver on one occasion shall not be a bar to or waiver of any right or remedy on any other occasion. All rights and remedies of the Payee hereunder, any other applicable document and under applicable law shall be cumulative CT Page 9069 and not in the alternative. No provision of this Note or any guaranty hereof may be waived or modified orally but only by a writing signed by the party against whom enforcement of such amendment, waiver or other modification is sought. Makers shall pay the Payee, on demand, for all reasonable costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred in the collection of this Note. This Note shall bind the Makers and Makers' heirs, representatives, successors and assigns and shall inure to the benefit of the Payee, its successors and assigns. The term "Payee" as used herein shall include, in addition to the initial Payee, any successors, endorsers, or other assignees of such Payee and shall also include any other holder of this Note. This Note shall be governed by and construed and interpreted in accordance with the laws the State of Connecticut, without regard to its rules pertaining to conflicts of laws thereunder.
IN WITNESS WHEREOF, the Makers have executed and delivered this Note as of the day and year first written above.
Makers:
Name: Philip Law Name: Valerie Law Address: Address:
 Valerie Shorrock 637 Valley Road New Canaan, CT 06840
COMMERCIAL DEMAND PROMISSORY NOTE
$16,000.00 Stamford, Connecticut December 4, 1995
FOR VALUE RECEIVED, the undersigned (the "Maker"), hereby unconditionally promises to pay to the order of John E. McConnaughy ("Payee"), ON DEMAND, at the office of the Payee located at 1011 High Ridge Road, Stamford, Connecticut 06905, or such other office as the holder hereof may designate, in lawful money of the United States, the principal sum of Sixteen Thousand Dollars ($16,000.00), together with interest thereon, as provided for in, and subject to the terms of, this Note.
1. Interest Rate; Payment of Interest. Maker shall pay interest, in arrears, on the unpaid principal balance hereof outstanding CT Page 9070 from time to time at a rate equal to eight percent (8%) per annum. Interest shall commence to accrue on the date hereof and shall continue to accrue until the principal hereof is paid in full, whether before or after demand or judgment (the "Final Payment Date"). Interest shall be payable on the first day of each February, May, August and November, and on each date on which a payment of principal is made hereunder, through and including the Final Payment Date. Anything contained in this Note to the contrary notwithstanding, the Payee does not intend to charge and the Maker shall not be required to pay interest or other charges in excess of the maximum rate permitted by applicable law. Any payments in excess of such maximum shall be refunded to Maker or credited against principal.
2. Prepayment; Application of Payments. Maker may prepay the principal hereof, in whole or in part, at any time without penalty or premium. All prepayments under this Note shall, unless the Payee otherwise agrees, be applied first to pay any costs and/or expenses payable by Maker pursuant to this Note, then to accrued and unpaid interest and then to principal.
3. Security. To secure the obligations of Maker under this Note, Maker hereby grants to Payee a first lien and security interest in all "inventory,"equipment," "accounts," "instruments," "documents," (as each such term is defined in the Article 9 of the Connecticut Uniform Commercial Code) and other business assets of Maker, all products and proceeds thereof, including the proceeds of insurance or any of the foregoing, and all replacements and/or substitutions of any of the foregoing (collectively, the "Collateral"). Maker agrees that it shall not permit any lien or encumbrance to be placed on the Collateral other than the security interests granted to Payee, and Maker agrees that it shall operate its business in the ordinary course and according to customary business practices. Maker agrees to take such further action and execute such further documents as Payee may request to evidence the security interest granted hereby and to more fully implement the provisions of this Note, including, without limitation, the execution and delivery of a security agreement which shall more fully set forth the rights of Payee as a secured party, Uniform Commercial Code financing statements and naming Payee as a loss payee on policies of insurance on the Collateral.
4. Certain Waivers. Maker and any endorser or guarantor hereof (collectively, the "Obligors") and each of them (i) waives CT Page 9071 presentment, diligence, protest, demand, notice of demand, notice of acceptance or reliance, notice of non-payment, notice of dishonor, notice of protest and all other notices to parties in connection with the delivery, acceptance, performance, default or enforcement of this Note, any endorsement or guaranty of this Note, or any collateral or other security; (ii) consents to any and all delays, extensions, renewals or other modifications with respect to this Note, any related document or the debt or collateral evidenced hereby or thereby or any waivers of any term hereof or thereof, any release, surrender, taking of additional, substitution, exchange, failure to perfect, record, preserve, realize upon, or lawfully dispose of, or any other impairment of, any collateral or other security, or any other failure to act by the Payee or any other forbearance or indulgence shown by the Payee, from time to time and in one or more instances (without notice to or assent from any of the Obligors) and agree(s) that none of the foregoing shall release, discharge or otherwise impair any of their liabilities; (iii) agree(s) that the full or partial release or discharge of any Obligor(s) shall not release, discharge or otherwise impair the liabilities of any other Obligor(s); and (iv) otherwise waive(s) any other defenses based on suretyship or impairment of collateral.
5. Commercial Transaction; Jury Waiver. THE MAKER ACKNOWLEDGES THAT THE TRANSACTION OF WHICH THIS NOTE IS A PART IS A "COMMERCIAL TRANSACTION" WITHIN THE MEANING OF CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, AS AMENDED, AND THAT ANY MONIES, PROPERTY OR SERVICES WHICH ARE THE SUBJECT OF SUCH TRANSACTION ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. THE MAKER HEREBY WAIVES ANY RIGHT WHICH MAKER MIGHT HAVE TO A NOTICE AND A HEARING, UNDER SECTIONS 52-278a-52-278g, INCLUSIVE, OF THE CONNECTICUT GENERAL STATUTES, OR OTHER APPLICABLE FEDERAL OR STATE LAW, IN THE EVENT THE PAYEE (OR HIS HEIRS OR ASSIGNS) SEEKS ANY PREJUDGMENT REMEDY IN CONNECTION WITH THIS NOTE, AND/OR RELATED DOCUMENT.
(b) THE MAKER HEREBY KNOWINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY AND THE RIGHT THERETO IN ANY ACTION OR PROCEEDING OF ANY KIND, ARISING UNDER OR OUT OF, OR OTHERWISE RELATED TO OR OTHERWISE CONNECTED WITH, THIS NOTE AND/OR ANY RELATED DOCUMENT.
6. Miscellaneous. Maker represents and warrants that it is duly authorized to enter into this Note and that this Note is its legal, valid and binding obligation, enforceable against it in accordance with its terms. No delay or omission by the Payee in CT Page 9072 exercising any right or remedy hereunder or under any guaranty hereof shall operate as a waiver of such right or remedy or any other right or remedy; and a waiver on one occasion shall not be a bar to or waiver of any right or remedy on any other occasion. All rights and remedies of the Payee hereunder, any other applicable document and under applicable law shall be cumulative and not in the alternative. No provision of this Note or any guaranty hereof may be waived or modified orally but only by a writing signed by the party against whom enforcement of such amendment, waiver or other modification is sought. Maker shall pay the Payee, on demand, for all reasonable costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred in the collection of this Note. This Note shall bind the Maker and Maker's successors and assigns and shall inure to the benefit of the Payee, its successors and assigns. The term "Payee" as used herein shall include, in addition to the initial Payee, any successors, endorsees, or other assignees of such Payee and shall also include any other holder of this Note. This Note shall be governed by and construed and interpreted in accordance with the laws the State of Connecticut, without regard to its rules pertaining to conflicts of laws thereunder.
IN WITNESS WHEREOF, the Maker has executed and delivered this Note as of the day and year first written above.
Maker:
THE FORGOTTEN GARDEN, INC.
Name: Valerie Law Title: President